## Barr and Daugherty *versus* Boyles.

96 31
149 293

96 31
157 450

1. *It seems* that in a suit against plaintiffs in an execution for seizing and selling property they must show the judgment on which the execution issued to justify the taking.

2. The rule is held differently, however, where the suit is against a sheriff or constable, who are ministerial officers. When an execution, regular in form, and having nothing on its face indicating a want of jurisdiction, is directed to a constable and placed in his hands, it is sufficient to protect him in duly executing it according to its commands.

3. The apparent regularity and presumed jurisdiction, as evidenced by the execution, not only protect such officer in its due execution, but make it his duty to proceed to execute the writ.

4. Whether a debtor assigned his property with intent to defraud his creditors is for the jury.

5. When it is for the jury to say whether the sale of personal property and the delivery and possession taken thereafter were such as would make the sale valid as against subsequent judgment creditors.

October 25th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas of *Armstrong county :* Of October and November Term 1880, No. 130.

Trespass de bonis asportatis by Joseph H. Boyles against William Barr and Robert Daugherty, for levying upon and selling, as constables, the machinery and fixtures of an oil well as the property of W. P. Floyd, which property plaintiff claimed he had purchased from said Floyd.

At the trial it appeared that Floyd was the lessee of a farm upon which was an oil well with certain machinery and fixtures. Under the terms of the lease Floyd had the right to remove, and on November 29th 1875 he sold said leasehold interest and the machinery and fixtures to the plaintiff, Boyles, for $425. A bill of sale was prepared and Floyd went at once to the land with Boyles, showed him the machinery and fixtures in a little wooden house, and gave him a key to the door of the house.

[Barr *v.* Boyles.]

Boyles took the key, locked up the house, and went home. It was in evidence that at the time of the sale the debts of Floyd did not exceed $150, and that he was worth, by his own estimate, between $2000 and $3000. The fixtures and machinery sold were estimated to be worth about $250. During the following December suits were brought against Floyd and judgments recovered to the amount of $150. In the meantime Floyd had remained in possession of a house on the property sold by him to Boyles, which he had reserved out of the bill of sale, occupying the same at a small rental which he paid to Boyles. About three weeks after the sale Boyles went to the land and nailed up the house containing the machinery. About the 7th of January 1876 he returned and directed Floyd and some other men to remove the machinery and fixtures, as he wanted them elsewhere. On the next day Floyd and others proceeded to remove them, when they were interrupted by the defendants, who, as constables, had levied on the same as the property of Floyd. The latter informed the defendants that he had put the property out of his hands, and that he had things fixed so that his creditors could not get a cent out of it. A day or two thereafter Boyles served on the defendants a formal notice of his claim to the goods. They, however, proceeded with the levy, and on the 14th of January sold the property and the purchasers carried it away. Boyles then brought this suit.

The defendants produced as a witness James Solley, a justice of the peace, who testified to the correctness of a record on his docket, whereby it appeared that two judgments were recorded as obtained by Adams and McBride, respectively, against Floyd, and that executions had been issued by said justice against said Floyd, and that said executions had been issued to Barr, as constable, and returned by him as having made the money by virtue of a levy and sale upon the machinery and fixtures in question. These executions were then offered in evidence.

The defendants then offered in evidence " an execution dated the 8th day of January 1876, by H. R. Fullerton, a justice of the peace, and under his seal, directed to Robert Daugherty, constable, at the suit of Thomas Phillips & Co. *v.* W. P. Floyd, commanding him to make the sum of $45.55 ; to be followed by evidence that H. R. Fullerton was a justice of the peace of Parker City, in the county of Armstrong, and that the witness ·under such execution levied upon and sold some of the property in this suit, for the purpose of justifying his selling of the same as the property of W. P. Floyd."

Objected to because these offers do not show nor propose to show any judgments as the basis and authority for the executions. (First, second and third assignments of error.)

[Barr v. Boyles.]

The following were among the points of the plaintiff, with the answers of the court thereto:

1st. That it is not necessary in order to perfect a purchaser's title to an oil well rig, including the derrick, engine, boiler, &c., attached to the land, that the purchaser should remain at or in the property purchased, but he is only required to take such possession as the property is susceptible of, and the taking of the key of the engine-house and locking the door thereof and retaining the key is such possession as will protect the purchaser as against the vendor and his creditors.

Ans. "Affirmed as qualified and explained in general charge." (Fourth assignment of error.)

3d. That fraud must be proved or inferred from competent evidence and cannot be presumed, and if the jury believe from the weight of evidence in this cause that the sale of the 29th day of November 1875 of the oil well, rig and fixtures by Floyd to the plaintiff was bona fide and for a valuable consideration, paid without notice to or knowledge of the plaintiff that Floyd was indebted, in that event the verdict of the jury should be for the plaintiff.

Ans. "Affirmed if there was such delivery and change of possession as are required, as explained in general charge." (Fifth assignment of error.)

5th. That there is no authority shown in the case to justify Robert Daugherty in selling any of the property claimed in the case.

Ans. "Affirmed as explained in the general charge." (Sixth assignment of error.)

The defendants submitted, inter alia, the following points, to which are appended the answers of the court:

1st. There is no evidence in this cause that actual possession of all the property mentioned in the bill of sale of 29th November 1875 was delivered or ever attempted to be delivered by Floyd to Boyles prior to 8th January 1876. We instruct you that such alleged sale was fraudulent in law, and conveyed no property to Boyles as against Floyd's creditors.

Ans. "The evidence is for the jury, and the request is refused." (Seventh assignment of error.)

2d. If the jury believe that the property alleged to have been sold by defendants on 14th January 1876, was by Floyd, on 29th November 1875, sold or attempted to be sold to Boyles by bill of sale, and that the purpose and intention of said Boyles, at the time of such alleged purchase, were not to use said property in operating upon the land where it then was, but to remove the same to Butler county, and that said Boyles took no possession of the same (other than locking the door of the engine-house), but permitted Floyd to remain in possession of at least part of the property mentioned in said bill of sale, and to exercise acts of ownership over the same,

15 Norris—3

[Barr *v.* Boyles.]

and to afterwards sell part of it; then we instruct you that said alleged sale by Floyd to Boyles was fraudulent in law and conveyed no property to Boyles as against Floyd's creditors.

Ans. "Refused; that is for the jury, as explained in general charge." (Eighth assignment of error.)

3d. If the jury believe from all the evidence in the cause that at the time of the alleged sale by Floyd to Boyles, the object and intention of the parties were to prevent the property being made liable for the claims of Floyd's creditors, then such alleged sale is void, and the verdict of the jury must be in favor of defendants.

Ans. "Affirmed so far as Barr is concerned and his executions extend, and in the negative so far as property not taken aside from his execution, as explained in general charge." (Ninth assignment of error.)

In the general charge the court, Boggs, P. J., inter alia, said:

"The concurrent possession with the vendor is colorable where the vendor appears to keep the same relation to the property that he did before the sale; the court will pronounce it fraudulent and colorable *per se.* While it is settled that where there has been such sufficient, actual or constructive delivery to the vendee, the fact that the vendor is employed as a servant about the premises in a capacity where he holds out no right of ownership, does not constitute such concurrent possession as the law demands, and the court in such case is relieved from pronouncing it so. In such case it is a question for the jury whether the change of possession has been actual and bona fide; and so I leave this case to you, for you to say from the evidence how that was.

"You will carefully consider all the evidence in the case and determine respecting the nature of the transaction as to whether or not the purchase of the property in dispute by the plaintiff from Floyd was bona fide, or whether it was colorable and fraudulent, with intent to hinder, delay and defraud creditors; and as you find that question one way or the other, so should be your verdict. If you find it bona fide and honest, then your verdict should be for the plaintiff for such measure of damages as I have already indicated; but if you find it fraudulent and colorable, as I have already explained, your verdict should be for the defendants on the executions in the hands of W. S. Barr; but as to any of it sold by the defendants which has not been levied and sold on the executions in the hands of Barr, your verdict should be for the plaintiff, giving compensatory damages therefor, as the defendants have shown no warrant or execution to justify themselves for selling any property not levied and sold in said three executions. This would be so even if the sale to Boyles was in fraud of creditors; it would still be binding between Floyd and Boyles and no outside person could attack it except creditors." (Tenth assignment of error.)

[Barr v. Boyles.]

Verdict for plaintiff. Defendants took this writ and alleged that the court erred as set forth in the above assignments of error.

*John Gilpin* and *G. S. Crosby*, for plaintiffs in error.—It was enough for the constables to show an execution issued by competent authority. Whether the execution was supported by a judgment was a question in which it would be unreasonable to involve them : Paul *v.* Vankirk, 6 Binn. 124. Under the circumstances of the case the court should have instructed the jury as a matter of law that the sale was void as against Floyd's creditors·: Chase *v.* Ralston, 6 Casey 539 ; Haynes *v.* Hunsicker, 2 Id. 58; McKibbin *v.* Martin, 14 P. F. Smith 352; Billingsley *v.* White et al., 9 Id. 465 ; Trunick *v.* Smith, 13 Id. 21; Garman *v.* Cooper, 22 Id. 32; Streeper *v.* Eckart, 2 Whart. 308 ; Clow *v.* Woods, 5 S. & R. 275; Dunlap *v.* Bournonville, 2 Casey 72; Milne *v.* Henry, 4 Wright 357; Brawn *v.* Keller, 7 Id. 104; Steelwagon *v.* Jeffries, 8 Id. 407.

*E. S. Golden* and *J. P. Colter*, for defendant in error.—The question whether the sale was fraudulent was properly submitted to the jury. It was clearly incompetent to put in evidence an execution without showing the judgment whereon it was founded.

Mr. Justice MERCUR delivered the opinion of the court, November 15th 1880.

This was an action of trespass for seizing and carrying away the machinery and fixtures of an oil well. They were on land leased for a term of years, with a right in the tenant to remove them therefrom. At a previous time they had been unquestionably owned by one Floyd. The plaintiffs in error were constables. They sought to justify the taking under and by virtue of executions against Floyd, to them severally directed. The defendant in error claimed to have purchased the property of Floyd, and to have taken possession thereof prior to any levy thereon. The validity, as against Floyd's creditors, of this alleged sale was denied, and presented the main contention in the case.

The executions directed to Barr, and the records of the judgments on which they issued, were given in evidence. Under the several offers covered by the first, second and third assignments, the plaintiffs in error offered in evidence the execution directed to Daugherty, to be followed by proof that H. R. Fullerton, by whom it purported to be signed, was a justice of the peace in and for the county of Armstrong, having his office at Parker City therein, and as such justice and at his office he issued the execution under his seal and delivered the same to Daugherty as constable; that as such constable he levied on, duly advertised and sold as the property of said Floyd some of the articles in question.

[Barr *v.* Boyles.]

The execution was in due form.  It recited that a judgment had been obtained before said justice by Thomas Phillips & Co. against W. P. Floyd, for the sum of $45, together with $7.20 costs, which judgment remained unsatisfied, and commanded him, said Daugherty, to levy the said debt, and interest thereon, together with costs, on the goods and chattels of the said debtor, and to expose the same to sale, &c.  The evidence was objected to, and rejected by the court by reason of the judgment recited in the execution not being shown.

In a suit against the plaintiffs in the executions for seizing and selling the property, they must show the judgments on which the executions issued to justify the taking.  The rule is held differently when the suit is against a sheriff or constable who are ministerial officers.

When an execution regular in form and nothing on its face indicates want of jurisdiction in the justice is directed to the constable and placed in his hands, it is sufficient to protect him in duly executing it according to its commands.  He is not required to examine the record to ascertain whether the justice had jurisdiction, and whether the proceedings are all regular.  The apparent regularity and presumed jurisdiction, as evidenced by the execution, not only protect him in its due execution, but make it his duty to proceed to execute the writ.  Among the numerous decisions recognising this principle may be cited Kerlin et al. *v.* Heacock, 3 Binn. 215; Paul *v.* Vankirk et al., 6 Id. 123; Allison *v.* Rheam, 3 S. & R. 139; Kingsbury *v.* Ledyard, 2 W. & S. 37; Moore *v.* Allegheny City, 6 Harris 55; Billings et al. *v.* May, 11 Id. 23; Cunningham *v.* Mitchell, 17 P. F. Smith 78; Fall Creek Coal and Iron Co. *v.* Smith, 21 Id. 230.  Also, Savacool *v.* Boughton, 5 Wend. 170; Beach *v.* Furman, 9 Johns. 330; Holden *v.* Eaton, 8 Pick. 437.  It follows that the offer of evidence covered by the third assignment, in connection with those covered by the first and second, was improperly rejected.

Under the evidence admitted, no error is discovered in the fifth, ninth and tenth assignments.  The remaining assignments relate to the sale and delivery of possession to the defendant in error.  As a whole the charge contains a fair exposition of the law.  Qualified and explained as the answers to the points are by the general charge, we see no sufficient cause therein for reversal.  The substantial error consists in the rejection of evidence, and for this

Judgment reversed, and a *venire facias de novo* awarded.