# Cessna *v.* Clouse, Appellant.

*Boroughs—Ordinance—Ordinance book—Signature of officers—Constable—Estrays—Process.*

A constable cannot be held liable as a trespasser for enforcing a borough ordinance relating to stray cattle, because the ordinance in question was not signed by the borough officers in their own handwriting in the ordinance book, if it appears that the original paper containing the ordinance was signed in their own handwriting by the president, secretary and burgess, that this paper with its signatures was copied into the ordinance book by the daughter of the secretary, and that the constable received a copy of it without any knowledge that the officers had not signed in the ordinance book. Although such an ordinance may be invalid, it is sufficient process to protect the constable.

Submitted Oct. 31, 1912. Appeal, No. 229, Oct. T., 1912, by defendant, from judgment of C. P. Bedford Co., Jan. T., 1912, No. 122, on verdict for plaintiff in case of John Cessna v. Elias Clouse. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Reversed.

Trespass for impounding a cow. Before JOHNSON, P. J., specially presiding.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $30.00. Defendant appealed.

*Error assigned* was in refusing to enter judgment for defendant n. o. v.

*J. H. Longenecker,* for appellant.—An officer is fully justified in an action of trespass by the authority which commands him to act and the mandate of which he has only obeyed: Barr v. Boyles, 96 Pa. 31; Moore v. Allegheny, 18 Pa. 55; Billings v. Russell, 23 Pa. 189; Leonard v. Dillon, 76 Pa. 44; Cunningham v. Mitchell, 67 Pa. 78;

Fall Creek Coal & Iron Co. v. Smith, 71 Pa. 230; Breck-woldt v. Morris, 149 Pa. 291; Rice v. Burns, 9 Pa. Superior Ct. 58; Klingler v. Bickel, 117 Pa. 326.

*B. F. Madore,* for appellee.—The ordinance was wholly invalid: Chambersburg Boro. v. Steck, 18 Pa. Dist. Rep. 154; Grier v. Homestead Boro., 6 Pa. Superior Ct. 542.

If the high constable had held a writ or order in his hands analogous to any of the writs which the courts have determined is legal process, then there might be some weight to the argument of appellant that he is exempt, but there is no course of reasoning that can give a copy of an invalid ordinance the force and effect of a warrant or other writ issued by a court or a justice.

OPINION BY RICE, P. J., February 27, 1913:

The plaintiff sued the defendant in trespass for impounding and selling his cow. The defendant, who was high constable of the borough of Rainsburg, defended under an ordinance of the borough regulating the running at large of cattle, horses, sheep and swine, and the taking up and disposing of the same. If this was a valid ordinance the defendant was not a trespasser, but was warranted in what he did. It is not claimed that the ordinance was invalid by reason of the subject-matter to which it relates, or of its provisions, and it is undisputed that it was duly adopted by the borough council and was transcribed at length in the ordinance book. At the end of the ordinance as transcribed appears the following:

"Ordained and enacted this 7th day of June, 1911.

"WM. F. RAWLINGS,
"President.

" Attest:
"W. B. FILLER, Secretary.
" Approved this 7th day of June, 1911.

"H. C. METZLER, Burgess."

The defendants offered to produce the original paper

containing the ordinance as it passed council, and to show that it was signed by the president of council, and signed and approved by the burgess, each in his own handwriting. This offer was objected to by plaintiff and rejected. But it appears by the testimony of Mr. Filler in another connection, that the ordinances adopted at the meeting of council on the evening of June 7, were signed by the officers the same evening, and this is undisputed. It also is undisputed that, after the ordinance had been transcribed, he placed a copy of it and of other ordinances in the hands of the high constable for his guidance. But it also appears by his testimony, that he did not write the ordinance in the book with his own hand, but gave it to his daughter to transcribe, and that the ordinance, the names and all, as it appears in the book, is in her handwriting.

Section 6 of the Act of April 3, 1851, P. L. 320, made it the duty of the secretary of council to transcribe the by-laws, rules, regulations and ordinances adopted into a book kept for that purpose, and, when signed by the presiding officer, to attest them, and made it the duty of the burgess to sign them after being duly and correctly transcribed by the secretary. It was generally held that this act did not give the burgess the power to veto, that his duty to sign was ministerial, that his signature did not express his approval, but was part of the statutory authentication of the ordinance, and that he might be compelled, by mandamus, to affix his signature: Trickett on Boro. Law, p. 77. But sec. 3 of the Act of May 23, 1893, P. L. 113, provides that every ordinance and resolution which shall have been passed by council shall be presented to the burgess, and, if he approves, he shall sign it, and that "before any ordinance shall come into force and effect as aforesaid the same shall be recorded in the borough ordinance book with the certificate of the secretary and be advertised as heretofore required by law." It must be conceded that, though an ordinance be duly adopted by council and be signed and approved by the burgess, and be signed by the presiding officer, and at-

tested by the secretary, it still must be authenticated in the ordinance book in the manner prescribed by law. It follows that a mere transcription of the ordinance, with the signatures as above stated, though it be correctly transcribed, is not complete without that authentication in the book itself. But it is to be observed that on the face of the record there was nothing to show the high constable that it was not entirely regular. Nor is there any evidence that he knew, or ought to have known, that the signatures of the officers were not in their own handwriting. It is argued, and we think correctly, that the principles applying to public officers executing process, fair on its face, is applicable. In Pollock on Torts, 102, it is said: "The principle which runs through both common law and legislation in the matter is that an officer is not protected from the ordinary consequence of unwarranted acts which it rested with himself to avoid, such as using needless violence to secure a prisoner; but he is protected if he has only acted in a manner in itself reasonable, and in execution of an apparently regular warrant or order which on the face of it he was bound to obey." In Cooley on Torts, 2d ed., 538, the rule is stated as follows: "The process that shall protect an officer must, to use the customary legal expression, be fair on its face. By this is not meant that it shall appear to be perfectly regular, and in all respects in accord with proper practice, and after the most approved form; but what is intended is, that it shall apparently be process lawfully issued, and such as the officer might lawfully serve. More precisely, that process may be said to be fair on its face which proceeds from a court, magistrate, or body having lawful authority to issue process of that nature, and which is legal in form, and on its face contains nothing to notify or fairly apprise the officer that it is issued without authority. . . . When such appears to be the process, the officer is protected in making service, and he is not concerned with any illegalities which may exist back of it. The word process is made use of in this rule in a very comprehensive sense, and will include

any writ, warrant, order, or other authority which purports to empower a ministerial officer to arrest the person, or seize or enter upon the property of an individual, or to do any act in respect to such person or property which, if not justified, would constitute a trespass." This principle has been recognized and applied uniformly in Pennsylvania for the protection of ministerial officers obeying the command of a writ regular on the face of it: Moore v. Allegheny City, 18 Pa. 55; Billings v. Russell, 23 Pa. 189; Leonard v. Dillon, 76 Pa. 44; Cunningham v. Mitchell, 67 Pa. 78; Barr v. Boyles, 96 Pa. 31; Fall Creek C. & I. Co. v. Smith, 71 Pa. 230; Breckwoldt v. Morris, 149 Pa. 291; Rice v. Burns, 9 Pa. Superior Ct. 58. It is argued, and it was upon this ground that the learned judge below refused to apply the principle, that this was not process. But, as we have seen from the statement of the rule as given by Judge COOLEY, the term process, as used in the rule, is quite broad enough to include an order of this nature which the constable was bound to obey. We see no sound reason why the principle should not apply to such a case. If it were to be held that a constable is bound to know the handwriting of officers signing, attesting, and approving a lawful ordinance, perhaps passed many years before, very inconvenient and unjust results would follow. We are not willing to hold that with respect to an ordinance which was in fact signed and approved by the proper officers, recorded in the proper book, which was kept in the custody of the proper officer, and which the officer was bound to obey. It may be, as appellant's counsel concedes, that the plaintiff's right of property was not divested, but it does not necessarily follow that the officer obeying the ordinance was a trespasser in so doing. We think that the defendant's point should have been affirmed.

The judgment is reversed.