# Philadelphia and Gray's Ferry Passenger Railway Company's Appeal.

1. Corporate franchises may be taken like any other species of property by the Commonwealth by virtue of the right of eminent domain, upon making compensation. Any one to whom the Commonwealth has delegated the right of eminent domain has like powers.

2. A supplement to a charter which merely confers upon the corporation a new right or enlarges an old one without imposing any new or additional burden upon it, is a mere license or promise by the state, and may be revoked at pleasure. It is without consideration to support it and is not binding on a subsequent legislature.

3. In this case the original charter and the supplement were passed at the same session with only a few days intervening, and the organization of the company took place after the passage of the supplement. There being other questions controlling the decision of the case, the court declined to pass upon the legal effect of the said supplement.

4. A supplement to the charter of a passenger railway company provided that it should have the exclusive right to use and occupy the streets named in the charter for railroad purposes. Said railway company by virtue of its charter used and occupied a single square of a cross street so as to make the connection between the tracks on the two main streets upon which the cars ran :

*Held*, that the exclusive grant must have a reasonable construction, and that its object was to protect the company from competition, nothing more.

*Held*, therefore, that there was nothing in the terms of the supplement

to prevent another railroad company from laying down a track on said single square of the cross street and running its cars thereon in an opposite direction to those of the company first named.

5. The second railroad company above named having been expressly authorized by Act of Assembly to construct its track upon the cross street in question, the utmost that the first railroad company was entitled to demand, was compensation for the use of said street.

6. A railway company was authorized by its charter to construct its tracks, inter alia, on a certain street. In order to avoid an obstruction at a certain point in said street, said company was authorized to " use such portions of adjacent streets as may be necessary." The company accordingly laid its track on a portion of an adjacent street and continued for several years to run its cars on such track. Subsequently, the obstruction being removed, it undertook to construct its track wholly on the first named street. A bill in equity being filed by another railroad company having its tracks on part of such cross street to restrain said construction:

*Held,* that the first named company had not made such an election of its location as to preclude it from altering the same, so as to run on the first named street.

*Held,* further, that the complainant had no standing in court to obtain an injunction on such ground. The Commonwealth or the city alone could institute such a proceeding.

January 12th 1883. Before MERCUR, C. J., GORDON, PAX-SON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Court of Common Pleas No. 2, of *Philadelphia county :* In Equity : Of July Term 1882, No. 64.

Appeal of the Philadelphia and Gray's Ferry Passenger Railway Company and the Schuylkill River Passenger Railway company from a decree of the said court, enjoining appellants from using or occupying a certain portion of Twenty-second street, in the city of Philadelphia, for railroad purposes.

Bill in equity between the Philadelphia City Passenger Railway Company, complainant, and the Philadelphia and Gray's Ferry Passenger Railway Company and the Schuylkill River Passenger Railway Company, defendants.

The bill set forth that complainant became a body corporate pursuant to the provisions of the Act of March 26th 1859 (P. L. 244), with authority, inter alia, to lay out and construct a passenger railway up Chestnut street to Twenty-second street, thence down the said Twenty-second street, with a single track to Walnut street. That by a supplement to said Act of Incorporation, passed March 31st 1859 (P. L. 325), it was enacted that the " said company shall have the exclusive right to use and occupy the streets named in the Act to which this is a supplement, for railway purposes; that by reason of said supplement the construction of their railway, etc., complainants were vested with the exclusive right to use and occupy Twenty-second street, between Chestnut and Walnut streets; that the Phila-

delphia and Gray's Ferry Passenger Railway Company became a body corporate, pursuant to the Act of April 9th 1858 (P. L. 237), with no authority to lay or operate any tracks on Twenty-second street, from Chestnut street to Walnut street, and the Schuylkill River Passenger Railway Company became a body corporate pursuant to Act of April 16th 1866 (P. L. 934), with power "to lay out and construct a railway in the city of Philadelphia from a point near the basin of the Fairmount Water-works, along Twenty-fifth and Callowhill streets to Twenty-third; thence along said Twenty-third southwardly to Gray's Ferry Road, and thence by South and Twenty-second streets north-wardly to Hamilton street, and from thence to the place of beginning; with the right to use such portions or any of the adjacent streets as may be necessary for the purpose of avoiding the obstruction at Twenty-second and Market streets, and to complete their circuit; with the right also to use and occupy the tracks on Gray's Ferry Road, now owned by the Philadelphia and Gray's Ferry Passenger Railway Company, and such other tracks that may be laid upon their proposed circuit, upon such terms and conditions as the parties may agree upon."

: . That a railway was constructed under the authority of the Act of April 16th 1866, to accomplish the circuit named therein without any use or occupation of Twenty-second street from Chestnut to Walnut streets, that the defendant claims to have acquired the franchises of the defendant lastly named, or to be possessed with the lawful authority to operate said railway, and threatens to proceed to lay out and construct a railway to be used for passenger purposes on and along Twenty-second street from Chestnut to Walnut streets.

The bill, therefore, prayed that defendants be enjoined from so doing.

The answer of the defendants admitted the incorporation of complainants as set forth, also the grant of the exclusive right to use and occupy Twenty-second street, from Chestnut street to Walnut street, inter alia, but averred that no new duty from the railway company, nor any compensation whatever were required as provided for by said supplement, and denied that said exclusive right vested in complainants.

They further admitted that a railway was constructed by the Schuylkill River Passenger Railway Company under authority of the Act of April 16th 1866, and that on account of the existence of the obstruction at Twenty-second and Market streets, at the time of the construction of said railway, the said Schuyl-kill River Passenger Railway Company, in accordance with the terms of their charter, used the adjacent streets, viz., Filbert, Twenty-third, and Walnut, for the purpose of avoiding said obstruction, their tracks having been laid on Twenty-second

street, south of Walnut, and on the same street north of Filbert, as provided by their charter.

They denied that complainants' consent is required before the said Schuylkill Passenger Railway Company can use or occupy for railway purposes the street in question, but averred that as the obstruction at Twenty-second and Market streets has been removed within the last two months, it was their right and duty to use and occupy Twenty-second street between South and Hamilton streets.

They averred that the city of Philadelphia through its law officer, the city solicitor, has declared that upon the removal of the obstruction theretofore existing at Twenty-second and Market streets, it was not only the right, but the duty of said defendants to lay a single track on Twenty-second street, and abandon the route now used, for the purpose of avoiding said obstruction, the consent of the councils of the city having been heretofore given to said Schuylkill River Passenger Railway Company to use and occupy the streets named, as provided for in their Act of incorporation (Ordinances of 1866, p. 223). That, by adopting the proposed route, defendants would not use complainants' rails or road-bed, but merely cross the same at the intersection of Twenty-second and Chestnut streets; that their cars run in an opposite direction, and cannot, therefore, interfere nor compete with complainants' business; that the proposed change would be of benefit to themselves in shortening their route and avoiding curves, and lessening the expense of running their cars. That the clear meaning of the grant in the supplement to complainants' charter was to protect complainants from loss by competition, which would not occur here; that the construction maintained by complainants would close Chestnut and Walnut streets to roads running north and south, and all other roads which run for a short distance on either street, and which have been so doing for years past without objection.

The cause was referred to an examiner (P. F. Rothermell, jr., Esq.,) to take testimony as to the mode of use of said streets by the parties respectively, &c., and upon the filing of his report, the cause was heard on bill, answer, and proofs.

The court sustained the bill, and entered a decree " that the defendants and each of them be perpetually enjoined from using or occupying Twenty-second street from Chestnut to Walnut streets, for railway purposes, and from laying or constructing railway tracks thereon."

The defendants thereupon took this appeal, assigning for error the said decree, and the refusal of the court to dismiss the complainant's bill.

*R. Loper Baird* and *George W. Biddle* (*E. Hopkinson* with them), for the appellants.—The supplement to appellee's Act of incorporation is a mere gift which may be reclaimed and revoked by the Legislature at any time, and the revocation can be made by any Act inconsistent with the provisions of the supplement, as has been done in this case: Johnson *v.* Crow, et al., 6 N. 184; In re Opening of Twenty-second street, 11 Weekly Notes, 465 (ante, p. 108). The meaning of the exclusive grant was merely to protect complainants from competition: Del. & Rar. C. & A. R. R. Co. *v.* Rar. & Del. Bay Co., 1 C. E. Green 322; Mich. Cen. R. R. Co. *v.* Mich. So. R. R. Co., 4 Mich. 371; Rich. Fred. & Pot. R. R. *v.* Louisa. R. R. Co., 13 How. 76; Pontchartrian R. R. Co. *v.* New Orleans and Carrollton R. R. Co., 11 La. Ann. Rep. 253; Boston & L. R. R. Co. *v.* R. R. Co., 5 Cush. 375. The word "exclusive" in complainants' grant does not surrender the state's right of eminent domain: West Riv. Bdg. Co. *v.* Dix, 16 Ver. 446; s. c. 6 How. 507; Enfield Toll Bridge Co. *v.* R. R., 17 Conn. 454; The Piscataqua Bdg. *v.* The New Hamp. Bdg., 7 N. H. 35; Bos. & Low. R. R. Co. *v.* Salem & Low. R. R. Co., 2 Gray 1; Shorter *v.* Smith, 9 Georgia 517; Cooley on Const. Lim. ch. ix. p. *273, etc., and cases cited in notes; Red. on Railways, vol. i. *257, and cases cited in notes; In re Kerr, 42 Barbour, 119; The Sixth ave. R. W. Co. *v.* Kerr, 72 N. Y. 330; Lake Shore R. R. Co. *v.* Chi. & West. R. R. Co., 97 Ill. 506; In re opening of Twenty-second street, 11 Weekly Notes, 465. Appellants' use of Twenty second street is not the same use of that street as that of appellees: Lake Shore R. R. Co. *v.* Chi. & West. R. R. Co., 97 Ill. 506. No question as to want of authority by nonuser or misuser can arise in this cause: Slee *v.* Bloom, 5 Johns. Ch. Cases 366; Hestonville, Mantua, etc., R. R. *v.* City, 8 N. 210; Story's Equity Jur. § 1123 c; Phila. Wilmington & B. R. R. Co. *v.* Williams, 4 Sm. 103; Black *v.* R. R., 8 Sm. 249.

Our so-called election applied as between certain adjacent streets, and other adjacent streets—not as between adjacent streets and Twenty-second street, because the latter street not being opened there was no opportunity to elect as to it. If the obstruction had been removed after the date of our charter, and before we built our road we would not only have had the right, but would have been obliged to construct it along Twenty-second street, without using the adjacent streets. The obstruction being removed now, we can adopt our straight course.

*David W. Sellers* and *Wm. Henry Rawle*, contra.—Where, at the same session of the legislature, a charter is granted by several Acts, and there is no acceptance nor subscription to

stock until after the last Act is passed, such charter should be considered as a unit, for it is the acceptance which creates the inviolable contract.   No corporation was, in fact, created by the first Act.   The corporate entity came into existence under both Acts, and the grant of letters patent : Lejee v. Railway, 10 Phila. 362.   The right in this case is exclusive by the terms of the charter, and has been judicially so construed : N. Branch R. Co. v. Railway Co., 2 Wr. 367 ; Passenger R. R. v. Railway Co., 3 Phil. 430.   The use of the appellees' tracks by other companies heretofore has been the result either of agreement or of a prior occupation, to which appellee's right was subject.   It requires express words to take an existing franchise for the benefit of another, and to take an existing railway longitudinally : Springfield v. R. R. Co., 4 Cushing 63 ; In re Boston & Alb. R. R., 53 N. Y. 574 ; Cake v. R. R. Co., 6 N. 307 ; note to Duncan v. Penna. R. R., 7 Am. & Eng. R. R. Cases 1. The appellant's chartered powers are exhausted by their location and use of their present road : Moorhead v. Little Miami R. R. Co., 17 Ohio 340 ; Morris & Essex R. R. v. Central R. R., 2 Vroom 207 ; Glamorganshire Canal Co. v. Blakemore, 1 Clark & Fin. 262 ; Louisville & Nashville Branch Co. v. Nashville Turnpike Co., 2 Swan 282 ; Turnpike Co. v. Hosmer, 12 Conn. 364 ; Griffen v. House, 18 Johns. Rep. 397 ; Peavey v. Calais R. R , 30 Maine 498 ; Bruing v. New Orleans Canal and Banking Co., 12 La. An. 541.

The subsequent removal of the obstruction is clearly immaterial upon the question of construction of the grant.   By no legal intendment can we deduce from the words of grant that the right to use " any of the adjacent streets " was merely temporary, and that when the obstruction should be removed (which no one ever dreamed of), the line of the road should be changed, and this in derogation of a previous charter to another company.

Mr. Justice PAXSON delivered the opinion of the court, March 19th 1883.

The right of the appellants to lay their track on Twenty-second street, from Walnut to Chestnut street, is resisted by the appellees on two grounds, viz : 1st. That the appellees have the exclusive use of said street by the express terms of their charter, and, 2d. That the appellants, having elected under their charter to occupy certain streets with their tracks to avoid the obstruction at Twenty-second and Market, cannot, now that said obstruction has been removed, relocate their tracks so as to occupy Twenty-second street from Walnut to Chestnut.   I will consider these objections in their order.

The charter of the appellees (The Philadelphia City Pass-

enger Railway Company) gives them no exclusive use of the streets which they are authorized to use. But by the second section of an Act entitled "supplement to an Act to incorporate the Philadelphia City Passenger Railway Company, passed the 26th day of March, A. D. 1859," which said supplement was approved the 31st day of March 1859, it was enacted that "The said company shall have the exclusive right to and occupy the streets named in the Act to which this is a supplement," &c. It was argued that this created a contract with the state which was beyond the interference of the Legislature.

There is reason and authority for holding that a supplement to a charter of incorporation which merely confers upon it a new right or enlarges an old one, without imposing any new or additional burden upon it, is a mere license or promise by the state and may be revoked at pleasure. It is without consideration to support it and cannot bind a subsequent legislature: Johnson v. Crow, 6 Norris 184; Christ Church v. Philadelphia, 24 Howard 300. In the present age of corporate greed it would be dangerous to hold the contrary doctrine. Were we to do so, corporations instead of being the creatures of the state might become its masters.

But it is said that the appellee's charter and the supplement thereto were passed at the same session of the legislature, with only a few days intervening, and that the organization of the company took place after the passage of the supplement, and upon the faith thereof.

We are not called upon in this case to decide upon the legal effect of a supplement passed under such circumstances. There are other questions of controlling importance in the case. The grant of exclusive privileges must have a reasonable construction. The object was to protect the appellees from competition, nothing more. It is difficult to see how the laying down of a track and its use by the appellants for a single square by cars running in an opposite direction from those of the appellees can produce competition.

Even if we are wrong in this, the principle is well settled that a franchise is property, and like any other species of property may be taken by the Commonwealth by virtue of the right of eminent domain upon making compensation. This principle was decided at the present term in the matter of the opening of Twenty-second street, and it would be an affectation of learning to cite the authorities which establish this principle. It is equally clear that any one to whom the Commonwealth has delegated its power of eminent domain is clothed with the same power. It follows that when the legislature by the Act of April 16th 1866 (P. L. 934), incorporated the Schuylkill River Passenger Railway Company (appellants), and authorized them

6 OUTERBRIDGE.—9

[Philadelphia, &c. Co.'s Appeal.]

to use Twenty-second street, the most the appellees can claim is compensation for the use of this one square. The question of compensation, however, is not before us and is not decided.

The second objection has even less merit. There was no election within the meaning of the cases cited by the appellees. A discussion of them is therefore unnecessary. The right to occupy Twenty-second street was expressly given by the terms of the appellant's charter. But at Twenty-second and Market streets there was an impassable obstruction. In order to avoid this, their charter authorized them " to use such portions of any of the adjacent streets as may be necessary." The only option which the appellants had, and the only election which they made, was as to what streets they would occupy in order to avoid the obstruction. That election, once made, could not, in my opinion, be changed, and to this extent the doctrine of election applies and no further.

I am unable to see what standing the appellees have, to raise this question. The Commonwealth might do so, but she is silent. The city of Philadelphia might do so, but her councils have expressly authorized the appellants to do what they propose to do, while the solicitor for the city in a well considered opinion addressed to the chief engineer and surveyor has instructed that officer that it is not only the right of the appellants to lay their track on Twenty-second street from Walnut to Chestnut, but that in view of the fact that the obstruction at Twenty-second and Market streets has been removed, it is their plain duty to do so, and to take up their tracks on the streets which have been heretofore used to avoid said obstruction. The appellees are not in any sense the guardians of the rights of the city or of the people, and may not interfere with the use of the street beyond the privileges conferred by their charter. Their right to be heard upon such a question is more than doubtful.

The decree is reversed, the injunction is dissolved, and the bill dismissed at the costs of the appellees.

MERCUR, C. J., and STERRETT, J., dissented.