## Road in Herrick and Ararat Townships.

*Road law—Certiorari—Questions of fact.*

On an appeal from an order of the quarter sessions in a road proceeding, the appellate court cannot review questions of fact passed upon by the lower court, inasmuch as the evidence is not a part of the record.

*Water companies—Eminent domain—Condemnation for road purposes of land used for reservoir.*

Land appropriated by a water company for a reservoir may be condemned for road purposes, under the conditions fixed by law. Whether such conditions exist is a question of fact which cannot be determined on certiorari.

*Road law—Report of viewers—Location—True meridian.*

An exception to a report of viewers to the effect that it "fails to show that the survey and location of the road was according to the true meridian, as required by the act of assembly," is not well taken where the report describes the first course as "south 44 degrees west as the needle now points (the magnetic variation being now about 8 degrees)." No surveyor would be at a loss to locate the course from this description.

*Road law—Requisites of viewers' report.*

A road viewers' report should state particularly, first, who of them were present at the view; second, whether they were severally sworn or affirmed; third, whether the road desired be necessary for public or private road, and the viewers should also "annex and return to the court a plot

or draft " of the road, " stating the courses and distances, and noting briefly the improvements through which it may pass."

Argued Jan. 22, 1901.    Appeal, No. 1, April T., 1899, by the Consolidated Water Supply Company, from order of Q. S. Susquehanna Co., April T., 1899, No. 1, overruling exceptions to report of viewers in the matter of the road in Herrick and Ararat townships.    Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER and W. D. PORTER, JJ.    Affirmed.

Exceptions to report of viewers.

The exceptions were as follows :

1. The view was held without notice.

2. The view was held without notice to exceptants.

3. No notice was given to the commissioners of the proper county or their clerk of the time and place of holding the view.

4. The road, as laid, is unnecessary for the reason that there is a road within a distance of about one fourth of a mile, practically parallel therewith.

5. The road, as laid by the report of the viewers, is substantially the road vacated by decree of this court, November 8, 1897, in No. 4, January sessions, 1896.

6. The viewers have given no damages to the Uniondale Water Company, although, as laid, the road is a great damage to said company.

7. The road, if maintained as laid, would work an irreparable injury to said exceptants.

8. The land taken for said road as laid by the viewers has already been appropriated for a public use, under the right of eminent domain, by the said Uniondale Water Company, a corporation of Pennsylvania, under lease to the Consolidated Water Supply Company, a corporation of Pennsyvania, and has been appropriated for the purpose of a reservoir.

9. The viewers, in laying said road, have not laid " the same having respect to the best ground for a road," nor " in a manner as shall do the least injury to private property."

10. Their report fails to show that the survey and location of the same was, and is, according to the true meridian as required by act of assembly.

The court in an opinion by SEARLE, P. J., found from the

evidence that proper notice had been given of the view; that the necessity for the road was a question solely for the viewers; that the question of damages was not a subject for exceptions, and that the presumption was that the viewers performed their duty and ran the road according to the true meridian. On the eighth exception the court found as follows :

This alleges that the proposed road is laid over land appropriated by a water company for the purposes of a reservoir.

The depositions taken by exceptant show that the Uniondale Water Company has been duly incorporated under the laws of Pennsylvania; that, in 1896, Roswell H. Patterson purchased a tract of land over which this proposed road has been laid, for the use of the Uniondale Water Company. The land was paid for by said water company, and Roswell H. Patterson conveyed the same to said water company by deed dated May 1, 1899.

February 28, 1899, the Consolidated Water Supply Company was incorporated under the laws of Pennsylvania, for the purpose of supplying water in the district composed of the counties of Lackawanna and Susquehanna. The Uniondale Water Company was chartered for the purpose of supplying water to the borough of Uniondale in Susquehanna county.

This land was leased to the Consolidated Water Supply Company by the Uniondale Water Company, by lease dated August 9, 1899. (The depositions refer to this lease by date and place of record, but no copy was attached to depositions.)

The Consolidated Water Supply Company, on March 2, 1899, passed and recorded upon its minutes, a resolution as follows :

" Resolved, by the Consolidated Water Company, that this company take, and appropriate, for the purposes authorized by its charter, all the waters of the Lackawanna river from the county line between Lackawanna and Susquehanna counties, at Forest City, and its several sources, by the various branches, thereof, and all the waters in the basin and watershed drained by said river; and all ponds, lakes, reservoirs, natural and artificial, pools, springs and rivulets within the said watershed, the same being necessary for the carrying out of the purposes of this incorporation, all being within the counties of Susquehanna and Wayne, in the commonwealth of Pennsylvania, and so much of the land of said tract as shall be required for the purposes of this incorporation, to be designated by the president

of this company, and the engineers, acting on his directions by marking on the ground, and to be reported to this board as soon as practicable."

It appears from the depositions and records, that, for many years, there was a public road near where the report of viewers have laid a road, but nearer the swamp and on lower ground; and that this old road, upon proceedings in the quarter sessions, was vacated in 1897. There had been opposition to the vacation of the old road, by the property owners along the road, and also by the citizens of Ararat township, but the opposition to the vacation of the old road was withdrawn, under an understanding with the parties who were active in obtaining a vacation of the road, that there would be no objection made to the laying out and opening of a road between the same termini, on higher ground up nearer the railroad. Mr. S. E. Dunn was active in opposing the vacation of the old road. R. E. Patterson was the president of the Uniondale Water Company. The legal title to the land, which is now owned by the Uniondale Water Company, was then in said Patterson, who now claims that he purchased this land originally for the Uniondale Water Company. That Mr. R. H. Patterson was then active in obtaining the vacation of the old road, and a party to the understanding that there would be no opposition to the laying of a new one on better ground, appears from the following letter, written by him to S. E. Dunn.

Copy of letter:

"July 8, 1897.

" Mr. S. E. Dunn,

" Burnwood, Pa.

" Dear Sir :—Your favor of July 8, 1897, is received. I note what you say about meeting the supervisors and arranging to have the old road vacated, and am pleased that you have brought about this arrangement. With regard to signing the petition for a new road, as I have already written you, we will make no protest against having the road built along the right of way of the railroad on the high ground, yet I could not truthfully represent to the court that we labored under great inconvenience for want of such road and I think it would be much better under the circumstances not to be a party to this proceeding. We

expect to carry out our arrangement fully and just as we stated it in the letter which you have.

" Yours truly,

(Signed)     " R. H. PATTERSON."

The acceptants claim that the purchase of this land by R. H. Patterson for the Uniondale Water Company was an appropriation of the same by said corporation for the purpose of a reservoir, it having been purchased for that purpose; that the subsequent resolution of the Consolidated Water Supply Company to appropriate the watershed of the Lackawanna river in the counties of Wayne and Susquehanna followed by the leasing of this land from the Uniondale Water Company and a subsequent survey of the proposed reservoir was such an appropriation of the land over which this road is laid by the corporations as prevents a subsequent appropriation of any portion of it for road purposes.

In support of this proposition they cite: In re Petition of Cleveland & Pittsburg R. R. Co., 2 Pittsb. 348; Del. & Hudson Canal Co. v. Scranton & Forest City R. R. Co., 1 Lack. Jurist, 97. In the case of petition of Cleveland and Pittsburg R. R. Co., the point decided was that the legislature has no power to authorize one railroad company to appropriate any premises of another railroad company which are necessary to the proper conduct of the business of the latter; but if one railroad company own land or right of way not necessary for the proper conduct of its business, such property may be taken for the use of another company just as the property of any one on the line of the proposed road.

The case of the Del. & Hudson Canal Co. v. Scranton & Forest City R. R. Co. decided that an actual survey and permanent location upon the ground of a railroad possessing the power of eminent domain is a legal appropriation of the site which will prevent a subsequent appropriation of it by another corporation for a like purpose.

Neither of these cases are similar to the case at bar. In this case the Uniondale Water Company purchased this land, across which a public road had been in existence many years previous to the incorporation of the company. In proceedings instituted to vacate this old road an amicable understanding was reached by all parties interested, including this water company, that no

opposition should be made to laying out a road between the same termini upon higher ground. This arrangement was for the benefit of this water company, as if carried out it removed the old road from the site of a natural reservoir which had previously been flowed to the depth of ten or twelve feet, and placed it upon higher ground, which necessarily increased the area of land which could be flowed without touching or interfering with the road. Having procured the abandonment of all opposition to the vacating of the old road by this understanding with its corresponding benefits, they cannot now set up their appropriation of this land as a reservoir for the purpose of defeating an arrangement made by them not to oppose the laying of a road upon higher ground. The Uniondale Water Company was incorporated in 1893. It purchased this land in 1896. It never made any appropriation for use as a reservoir by survey and marks upon the ground. The Consolidated Water Supply Company did not lease this land of the Uniondale Water Company until after the viewers had laid this road and subsequently surveyed it so far as appears for the purpose of obtaining information to enable their engineer to testify as to how the road as laid would interfere with a reservoir made by erecting a twenty-foot dam. It does not appear that there is any well defined intention on the part of the Consolidated Water Supply Company to build a reservoir at this place at any definite fixed time.

Whatever title these water companies have acquired in this land was originally subject to the easement of a public road. The arrangement regarding the vacation of the road was, in equity, merely a change in the location of this easement, which is being carried out according to the understanding of the parties. Upon the argument of the exceptions, it was claimed on the part of the water company, that the road should have been laid still nearer the right of way of the railroad company, but they have made no move to have it so laid. Their exception goes to the right to lay any road. If they had wished the road laid on higher ground, they could have proceeded, by re-view, to accomplish that purpose. If the appropriation of land by a water company, under their right of eminent domain, or by purchase, carried with it, as claimed by exceptant, the right to prohibit the appropriation, by the public, of any portion of the

same for a road, we think, under the circumstances of the case, the exceptants are estopped from exercising such right of prohibition.   The cases cited by the learned counsel for exceptants do not establish the proposition claimed, and a careful examination by counsel has failed to furnish any citation in point.   To follow exceptant's claim to its logical conclusion, their appropriation of all the streams, ponds, pools, lakes and rivulets and reservoirs, natural and artificial, " within the watershed of the Lackawanna river, in the counties of Susquehanna and Wayne," would practically prevent the building of any public road upon desirable ground in the southeastern portion of the county.

The exceptions are dismissed, and the report of viewers confirmed finally.

*Errors assigned* were in dismissing exceptions to report of viewers.

*William A. Wilcox* and *A. B. Smith,* for appellants.—The right of the public, to take, for highway purposes, is certainly no higher than the right to take for purposes of water storage.

Moreover, it is a prior right, and it is well established, in Pennsylvania, as well as elsewhere, that property cannot be taken by right of eminent domain if it has already been appropriated under such right for a public use, except possibly where the legislature has expressly authorized the higher right, or where there is the most imperative necessity, and the new use is consistent with a reasonable use of the earlier franchise : Pennsylvania Railroad Company's Appeal, 93 Pa. 161; Groff's Appeal, 128 Pa. 632; Scranton Gas & Water Co. v. Lackawanna Iron & Coal Co., 167 Pa. 136.

The bearings of the compass as given by the viewers in their report are "as the needle now points," evidently meaning by the word " now " the time of running the line of the road.   The needle of the compass used by a surveyor is a magnetic needle, and points coincident with the magnetic meridian.

It follows that the bearings in totidem verbis of the survey are given by the magnetic meridian.

Hence, the variation of the needle of the compass referred to by the act of 1850, under consideration may be, at the time of such adjustment in either one of two directions, viz., east or west : Road in Friendsville & Middletown, 16 Pa. C. C. R. 172.

*T. J. Davies*, for appellee.—The appellate court will take no cognizance of despositions in road cases, but the examination must be confined to the state of the record as it appears : Appeal of the Central R. R. Co. of New Jersey, 102 Pa. 39 ; Manheim Twp. Road, 12 Pa. Superior Ct. 284 ; In re Kensington, etc., Turnpike Co., 97 Pa. 260 ; Benzenhoefer's App., 154 Pa. 547.

OPINION BY SMITH, J., March 19, 1901:

The specifications of error, in this case, relate to very little which this court can examine.

Questions one and two, in the appellant's statement of the questions involved, have relation to matters of fact, viz : (1) Was there due proof of the notice required by law ; (2) Whether there was due proof of such an agreement as would estop the appellants on a point in controversy. These questions were decided by the court below on the evidence produced by the parties ; and as that evidence is not part of the record, we are without power to determine its sufficiency.

Question three, " Whether land appropriated by a water company for a reservoir can be taken from the company for conflicting highway purposes," requires little discussion. It is well settled that a corporate franchise is a form of private property, and, like other private property, may be taken for public use, under the conditions fixed by law : In re Melon Street, 192 Pa. 331; Phila. & Gray's Ferry Pass. Railway Company's Appeal, 102 Pa. 123. Whether, in the case before us, these conditions existed ; whether a water company had been duly incorporated, and its charter recorded " in the county where its chief operations are to be carried on," making it " from thenceforth a corporation for the purposes and upon the terms named in its charter ; " whether such a corporation had appropriated for public use the land on which the road complained of was laid, at a time when it could lawfully do so; and whether such use would be materially impaired or abridged by the opening of the road, are questions of fact which it was the province of the court below to determine. The matters which they embrace are involved in the eighth exception below, the overruling of which is the subject of the fifth specification ; the exception asserting, as matter of fact,

that the land taken for the road "has already been appropriated for a public use, under the right of eminent domain, by the Uniondale Water Company, for the purpose of a reservoir." This cannot be determined as a question of law; nor can we review the conclusions of fact, in the premises, reached by the court below.

Question four, arising from the ninth specification, is based on the supplemental exception below, that the report of the viewers "fails to show that the survey and location of the road was according to the true meridian, as required by the act of assembly." The statutory provision on this point is that contained in section 3 of the act of June 13, 1836; this directs that when viewers make a report laying out a road they "shall also annex and return to the court a plot or draft thereof, stating the courses and distances, and noting briefly the improvements through which it may pass."

In the present case, the report describes the first course as "south 44 degrees west as the needle now points (the magnetic variation being now about 8 degrees)." No surveyor would be at a loss to locate the course from this description. After the Act of April 26, 1850, P. L. 595, had stood on the statute book for thirty-five years, Mr. Justice CLARK, in discussing the essentials of a report, said: "It is required that the viewers' report shall state particularly, 'first, who of them were present at the view; second, whether they were severally sworn or affirmed; third, whether the road desired be necessary for a public or private road;' also, that the viewers shall 'annex and return to the court a plot or draft thereof, stating the courses and distances, and noting briefly the improvements through which it may pass.' These are the requisites of a report, as defined by the act of 1836, and they do not differ materially under the act of 1845:" Road in South Abington Twp., 109 Pa. 118. In the case before us, the report contains all these requisites, and contains matter to rebut the presumption that in establishing the course of the road the viewers did their duty.

The record, in this case, shows a petition, an appointment of viewers, an order to view, a report by the viewers, laying out a road, with a draft attached, and an order of confirmation; all of which are in due form. These are all that we can consider.

Allegations of errors, omissions and irregularities, not appearing therein, but resting on extrinsic evidence, present questions of fact for the consideration of the court below. Their determination below is final, and cannot be reviewed by this court, since the evidence on which it is based is no part of the record and is therefore not brought before us by the appeal. This has been so often held that it ought not to be necessary for us to repeat it.

The record being free from error, the order of final confirmation is affirmed, at the cost of the appellants.