## Cake v. Sunbury Borough, Appellant.

*Deeds—Descriptions—Boundaries—Reference to plot—River as boundary.*

1. Where reference is made in deeds for the sale of lots to a plot on which they are shown with numbers, streets, alleys and water courses, the plan so referred to becomes a material part of the conveyance, and is to have the same effect as if it were copied into the deed.

2. Ordinarily the construction of a deed or other document is for the court, but where boundaries are to be ascertained, and where the intention of the parties is to be discovered in the light of conditions and circumstances extraneous to the documents the case is for the jury .

3. Where a deed calls for a street as one of the boundaries, and refers

to a plot, and the plot does not show the street, but a river as the boundary, and evidence as to the local conditions and circumstances tend to show that the river and not the street was intended as the boundary, the question as to what was the boundary intended is for the jury and not for the court.

4. Where a road is laid out or dedicated to a navigable stream, the road runs to the water even though it has not been worked or used further than the top of the bank. The ground between high and low-water mark is as much subject to appropriation to a road as any other land; and the same rule applies to a road terminating at a navigable river which is applicable in the case of one road connecting with another the two thereby becoming a continuous public highway.

5. Where a plan of lots indicates the west boundary of the lots as a river, and subsequent deeds by the owner call for a street as the west boundary, and it appears that the high-water line of the river overlapped the street, it may be inferred that the owner did not claim to reserve anything between the street and low-water mark. In such a case it will be presumed that the owner intended to secure to the purchasers of the lots and to the public access to the water; and this presumption is strengthened if it appears that the river bank was precipitous, and that there was no soil available to the owner between the street and the river for improvements of any kind. The intention of the owner, however, is for the jury.

*Boroughs—Streets—Removal of earth.*

6. A borough may make use of the soil in a street for any authorized public purpose, and an abutting owner has no standing to object to such use.

Argued Oct. 29, 1909. Appeal, No. 115, Oct. T., 1909, by defendant, from judgment of C. P. Northumberland Co., Sept. T., 1907, No. 348, on verdict for plaintiff in case of J. A. Cake and Jennie Cake *v.* Sunbury Borough. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Trespass to recover damages for removing the soil of a street. Before SAVIDGE, P. J.

The facts are stated in the opinion of the Superior Court.

The court charged in part as follows:

[I hold that these plaintiffs have the riparian rights to

that portion of the land between high and low-water mark outside of the roadway, whatever that may amount to, and that they own the fee in that land subject to the public's rights, and that they also have the fee in the western half of the public highway.] [6] I hold this under the authority especially of Smucker v. Pennsylvania Railroad Co., 6 Pa. Superior Ct. 521. In that case the state had appropriated, or if they took it not by appropriation then there had been deeded to them, a strip of land in the borough of Huntingdon, along the north bank of the Juniata river, for canal purposes. The state had the fee, and the railroad afterwards became the owner of that strip of land absolutely, and as I understand from the case there was nothing left to the former owner between the river and this canal property except that portion of land which was between high and low-water mark, and to which there was attached no upland. The owner afterwards sold this piece of land being altogether between high and low-water mark to a third party and the railroad company trespassed, and on the trial the trial judge directed a verdict for the railroad company and the case was reversed, and in their opinion, as I understand their language, the Superior Court holds (and their judgment affirmed), that there could be ownership in this strip of land between high and low-water mark notwithstanding there were no attached uplands. [Under that authority I hold that the fee to this strip of land between high and low-water mark belonged to the heirs of Joseph W. Cake at the time of his death. J. Adam Cake took one-fourth thereof and Joseph W. Cake, Jr., one-fourth thereof. Jennie Cake, at sheriff's sale, purchased that one-fourth interest; hence the plaintiffs in this case became entitled to one-half interest and are entitled to one-half of the value of the sand and gravel taken away within the last six years.] [7]

It seems from this case that all this gravel probably came from within the limits of the roadway but below the break in the bank, and not from that portion of the

roadway which has been used as a public highway. It seems this road was originally laid out fifty feet, and it seems it extended out much further than it now extends, and that it has been gradually wearing away until finally it was necessary to put there a solid stone wall in the nature of a riprap in order to protect the bank, and there is only remaining now about twenty-four or twenty-five feet of the original road, and for the purpose of this case, and I take it for granted, as the evidence seems to show that this gravel came from the western half of the public highway as it was originally located and originally used there fifty or sixty years ago. But that portion of the highway has become as it were the beach of the river and is several feet below the traveled portion of the highway, and is not any longer used for public purposes, and this gravel came from that portion of the highway, and it came from lands which these parties owned subject to the right of way over the land. [The public has no further rights than the simple use of the highway; the fee of the land belongs to the original owner or his grantee, and if the road were to be abandoned the land would go back for all purposes to the original owner, and that party owning on the east side would take to the center of the street, and that party owning on the west side would take to the center of the street, and that would be the dividing line between the two owners at the time of the abandonment of the street if it ever were abandoned.] [8]

The borough claims they have a right to take this gravel away, inasmuch as it is within the lines of the public highway; within the fifty feet. They undoubtedly would have a right to use the gravel in the repair of the street at that point if they were cutting down the street and grading it; they would have a right to remove the ground for the purpose of grading the street, and take it to another street and do with it whatever they pleased. They have a right to cut down trees and make culverts and do anything that is reasonably necessary to the re-

pair of the streets, and if they had used this gravel in that way I would say Mr. Cake would have no right to recover. [But I think they had no right to take this gravel and cart it away to some other street and use it, unless they took it away for the purpose of bettering this street, when they might use it for bettering another street at the same time.] [9]  Might kill two birds with one stone if they had an opportunity.  But there is no pretense in this case and we know from the evidence that the gravel was not taken for the betterment of this street.  That it was taken along the beach, the stuff that had probably been washed in there, and was simply taken because it was convenient for the borough to get, and was made use of in paving other streets.

[Now, gentlemen, you may find therefore a verdict in favor of the plaintiff, and you may return him whatever you believe the material taken away was worth in the market.] [4]

Defendant presented this point:

3. That high-water mark falls within the limits of Front street along the lands in question and the riparian rights incident to the land composing the street belong to the public and not to the plaintiff.  *Answer:* The high-water mark varies within the limits of the street, within the limits in question, there can be no doubt; but whether high-water mark be determined as to the condition of the river before the dam was taken out or its present condition, the removal of the dam does not greatly affect the high-water mark on the eastern and western line of the river.  That is to say, it extends eastwardly with the dam out almost as far as it extended before the dam was taken out because the bank is very precipitous—the slope being one to one—and the slope wall being built in that way the high-water mark in both cases is always above the bottom of this slope wall.  It would make a difference in perpendicular height of seven and eight-tenths feet, and probably horizontally a difference of not more than six or seven feet.  The riparian rights incident to

the land of a passing street do not belong to the public, they belong to the owners of the fee, these plaintiffs and the other heirs of Joseph W. Cake, deceased. [3]

Verdict and judgment for plaintiff for $168.46. Defendant appealed.

*Errors assigned* among others were (3, 4, 6, 7, 8, 9) above instructions, quoting them.

*J. P. Carpenter* and *J. F. Schaffer*, for appellant.— Where a map or plan is referred to in a deed it becomes a material and essential part of the conveyance and it is to be given the same force and effect as if copied into the deed: Ferguson's App., 117 Pa. 451; Higgins v. Boro. of Sharon, 5 Pa. Superior Ct. 92; Deppen v. Bogar, 7 Pa. Superior Ct. 434; Schenley v. City of Pittsburg, 104 Pa. 472; Johnson v. Grenell, 188 N. Y. 407 (81 N. E. Repr. 161); Delachaise v. Maginnis, 44 La. Ann. 1043.

It is beyond question that the use made of the subsoil of Front street was an authorized municipal use: Wood v. McGrath, 150 Pa. 451; Dempster v. United Traction Co., 205 Pa. 70.

*A. W. Potter*, with him *J. A. Cake* and *W. E. Houseworth*, for appellee.—The title of the purchaser extended to the center of Front street and no further: Paul v. Carver, 26 Pa. 223; Cox v. Freedley, 33 Pa. 124; Birmingham v. Anderson, 48 Pa. 253; Wood v. Appal, 63 Pa. 210; Brisbine v. R. R. Co., 23 Minn. 114; Morris v. U. S., 174 U. S. 196 (19 Sup. Ct. Repr. 649); Smucker v. R. R. Co., 6 Pa. Superior Ct. 521.

The owner in fee of the reversion of one-half of a borough street may maintain trespass against the borough for the value of the soil removed by it therefrom and used in the improvement of its general system of streets: Woodruff v. Neal, 28 Conn. 165; Harrison v. Brown, 5 Wis. 27; Jewett v. Gage, 55 Me. 538; State v. Laverack, 34 N. J. L. 201.

OPINION BY HENDERSON, J., July 20, 1910:

At the time when Joseph W. Cake acquired title to the land out of which this contention arises a public highway had existed for more than sixty years along the east bank of the Susquehanna river over the Cake tract. Many years prior to the date of the Cake title the state had constructed a dam in the Susquehanna river under the internal improvement Act of April 9, 1827, P. L. 192. The effect of this dam was to raise the level of the water in the river about eight feet. The road referred to is now Front street in the borough of Sunbury. It appears from the evidence that the roadway was shifted eastward as a result of the washing of the bank and that the high water line falls within the limits of the street. About 1866 Joseph W. Cake caused his land fronting the river to be plotted as an addition to the borough. There were about 100 blocks in the plot with numerous streets and alleys, the general course of the streets being north and south and east and west. The east and west streets were plotted to the river as was also the tier of lots fronting thereon. Front street is not indicated nor referred to on the plot. All of these lots were afterward sold by conveyances which bounded the grant on the west by Front street, but in each of them there was a reference to the plot for identification and a copy of the plot was attached to the deed for one at least of the lots. This action was brought to recover damages for taking sand and gravel from the river bank between high and low water marks the plaintiffs claiming an interest therein under Joseph W. Cake. There is evidence tending to show that a large part of the sand and gravel removed was taken within the lines of Front street, but the plaintiffs contend that one-half of the fee to the western half of the street is in them and they deny the right of the borough to remove earth from that street to any other street of the borough unless for the improvement of Front street itself. The court gave binding instructions for the plaintiffs as to their right to recover, basing his conclusion on the description in the deeds

of Joseph W. Cake for the front tier of lots bounded as they were by Front street. Two questions arise with reference to the effect of these grants: (1) Did they convey a title to low water mark on the river? (2) If they have not this effect do the deeds and the extrinsic facts show a dedication of the river bank to the public? As to the first question it may be conceded that if the rights of the grantees for the lots were to be determined solely by the call for the western boundary they would take to the middle of the street and the fee in any land west of that line would remain in the grantor and pass to his assigns or descend to his heirs. But in determining the question regard must be had not only to the deeds, but to the plot of the land to which the deeds referred and which by reason of that reference is to be read into the deeds. It is a principle of law not to be disputed that where reference is made in deeds for the sale of lots to a plot on which they are shown with numbers, streets, alleys and water courses the plan so referred to becomes a material part of the conveyance and is to have the same effect as if it were copied into the deed: Birmingham v. Anderson, 48 Pa. 253; Transue v. Sell, 105 Pa. 604; Ferguson's Appeal, 117 Pa. 451; Thomas v. Poole, 73 Mass. 83; Deppen v. Bogar, 7 Pa. Superior Ct. 434; Parker v. Kane, 63 U. S. 1; Higgins v. Sharon Boro., 5 Pa. Superior Ct. 92. In ascertaining, therefore, what Joseph W. Cake conveyed his deeds and the plot are to be taken together. It is apparent from this plot that the front lots have the river for their western boundary and that the streets leading toward the river have their western termini at the water's edge. If the sales were according to the plot, therefore the proprietor parted with all of his land in the lots to low water mark on the river and nothing remained to pass to the plaintiffs, for it will not be contended that if the call in the deeds was for the river any estate was reserved. What then was the intention of the grantor? The call for Front street is inconsistent with the description in the plot which designates a conspicuous natural boundary.

The plot should, therefore, be considered as explanatory of the intent of the parties and descriptive of the use of Front street as a boundary.   When we consider the deeds and the plot and the extrinsic circumstances connected with the location of Front street along high water mark of the river and the further fact that in the plot no designation of Front street or reference thereto is made it becomes a matter of the highest probability that Front street was regarded by the grantor as equivalent to the river and that the grants were intended to cover all of the ground included in the plot.   This view is strengthened by the fact that the high water line was close to the brink of the bank; that the bank was abrupt with the water a few feet below and that as shown by the defendant's evidence there was no intervening land useful to the grantor.   The character of the river, the inconsiderable margin between the water and the west line of Front street, the advantage to the purchasers of the lots with an unobstructed river frontage confirm the inference that the proprietor intended to convey according to his plan of lots.   When viewed in this light the deed may be reconciled with the plan and the call for Front street controlled by the boundaries in the plot.   Evidence offered by the defendant shows that a part of Front street was in fact within the high water limit, and the grantor in making his deeds may well have considered that the equivalent of the river in his call.   We cannot ignore the reference in the deeds to the plan of the lots, and the locations are so definitely and explicitly set forth and the descriptions therein are so essential to the understanding of the deeds, that they must be regarded as explanatory of the intention of the parties.   This was the course of reasoning applied in Com. v. McDonald, 16 S. & R. 390.   In that case a block of thirty-two lots was conveyed bounded on the north by the Allegheny river and on the south by the Monongahela river.   The lots had been plotted and were referred to in the deed by number.   By reference to the plot it was seen that the lots did not extend to the river but that a margin of land

was left apparently for public use.   The court there held that the definite indication of the lots by the plot should control the call for the rivers in the deed and that title did not pass to the land outside of that which was plotted. In like manner in Birmingham v. Anderson, 48 Pa. 253, there was a conveyance of a block of lots bounded on one side by the Monongahela river.   The deed designated them by number with reference to a plan of lots, and the conclusion of the court was that the words "Monongahela River" must be controlled and governed by the plan according to which the real northern boundary was the beach of the river.   In another case, Schenley v. Pittsburg, 104 Pa. 472, according to the description in the deed certain lots designated by number were conveyed "bounded northwardly by said Allegheny River and southwestwardly by said Monongahela River."   On the plan of these lots an open space was marked along the Monongahela river front not included in the lots and with respect to the effect of this conveyance the court said that the precise and accurate description and location of the lots furnished by the plan cannot be controlled by the general language of the deed calling for the rivers as the boundaries of the respective blocks of lots.   In Barclay v. Howell, 31 U. S. 498, the question was whether a lot, No. 183, on a town plan extended to the Monongahela river where the description in the deed called for the river Monongahela as one of the boundaries and referred to the lot by number; and there the decision was that the plot should control the call in the deed.   These cases it is true restricted the descriptions in the deeds, but the principle is plain and the converse of the case apparent.   The plan of lots is incorporated into the deed and in connection with the surrounding circumstances is used to interpret the intent of the parties with reference to the extent of the grant.   We do not regard the question, therefore, as one of law to be determined by the court according to the call in the deed but a question for the jury under all of the evidence whether Joseph W. Cake intended and did by

his conveyances part with his title to the land to the water's edge. Ordinarily the construction of a deed or other document is for the court, but where boundaries are to be ascertained and where the intention of the parties is to be discovered in the light of conditions and circumstances extraneous to the documents the case is for the jury. In Barclay v. Howell, 31 U. S. 498, it was said: "It is the province of a court to instruct the jury that they should fix the boundaries of a tract in controversy by an examination of the whole evidence and that artificial or natural boundaries called for control a call for course and distance. But it would withdraw the facts from the jury if the court were to fix the boundaries called for and then determine upon the legal effect of the instrument." And in Com. ex rel. v. Y. M. C. A., 169 Pa. 24, the determination of a similar question was considered to be a mixed question of law and fact. Of similar import is Palmer v. Farrell, 129 Pa. 162. Proof by the defendants of the fact that the plot was made fixing the river as the western boundary and that conveyances were delivered with reference thereto for identification of the land conveyed with evidence that high water mark was within the lines of Front street and that the slope from the brink to the river was precipitous would support a conclusion of the jury that the intention of the proprietor was to part with his land to the river and this inquiry should have been submitted to the jury.

The dedication to the public set up by the defendant involves the same state of facts already considered. The position taken is that even if the call in the deeds for Front street as the west boundary of the lots is accepted as the limit of the title of the grantees there is nevertheless evidence on which a finding could be based that the proprietor dedicated the space between the middle line of that street and the water in the river to the use of the public. That the plot exhibited and referred to in the Cake deeds carries the lots to the river is not disputed. It plainly shows that the river is the western boundary of the whole

plot, and where a navigable stream is called for it is always understood that the ownership extends to low water mark: Klingensmith v. Ground, 5 Watts, 458. The streets are also extended to the river which makes the water's edge their termini. Where a road is laid out or dedicated to a navigable stream the road runs to the water even though it has not been worked or used further than the top of the bank. The ground between high and low water is as much subject to appropriation to a road as any other land. And the same rule applies to a road terminating at a navigable river which is applicable in the case of one road connecting with another the two thereby becoming a continuous public highway: Balliet v. Com., 17 Pa. 509; People v. Lambier, 5 Denio, 9. As Front street was laid out along the bank of the river and as there was evidence that the high water line overlapped the street along a part of its course the adoption of Front street as the west boundary of the lots sold on that street could be accounted for in the light of the plot as a recognition by the proprietor that Front street and the high water line were coincident and that as proprietor he did not claim or reserve anything between the street and low water mark. If Front street had been laid out for the first time as a part of this plan of lots and the evidence showed that it was along the high water margin of the stream the inference would be legitimate that the intention was to secure to the purchasers and to the public access to the water, and the fact that it was an ancient highway over which the proprietor had no control but which must necessarily be taken account of in his project does not change the legal situation. This principle was adopted in Pewaukee v. Savoy, 103 Wis. 271; Rowan v. Portland, 8 B. Mon. 232; Watson v. Peters, 26 Mich. 508. And in Barclay v. Howell, 31 U. S. 498, it was declared in effect that to contend that between the boundary of a street and the public right to navigable water where the two meet as in case of the existence of a street bounded by a navigable river a private right can exist and be exercised hostile to

the public right is unreasonable and against law. In Barney v. Keokuk, 94 U. S. 324, it was decided that a street bordering on a navigable river according to the plan of the town must be regarded as intended to be used for the purposes of access to the river and the usual accommodations of navigation in such a connection. The plot showing the river as the western boundary, the street being located along the river bank, that bank being precipitous and there being no soil available to the proprietor between the street and the river for improvement of any kind the inference is strong that the intention was to give to the purchasers of the lots and to the public the obvious advantages of the river front, and in this view of the case the call for the street as the western boundary of the lots is not inconsistent with the theory of a dedication of the western half of the street or the riparian right to the public. The sale of lots by a plan is a contract with the purchasers not only granting the right of way or use to them but also for public use: Heckerman v. Hummel, 19 Pa. 64; Pittsburg v. Epping-Carpenter Co., 194 Pa. 318. Whether the conveyance is to the middle of the way or to low water mark in a navigable stream is a question of construction in the particular case depending on the intent as expressed in the description and illustrated by the locality: Webber v. R. R. Co., 43 Mass. 147. The reference in the deed to Front street and the plot and the conditions shown to exist would be evidence supporting the theory that the grantor did not intend to retain the thread of land at the river brink, but that he intended to give to his grantees with the land the use of the river front. This was also a question proper for the consideration of the jury. The learned trial judge considered Smucker v. Penna. R. R. Co., 6 Pa. Superior Ct. 521, to be a controlling case in favor of the plaintiffs. This case was reversed, however, in 188 Pa. 40, without a new venire and it has not the conclusive effect attributed to it in the court below. It was conceded in the opinion of the Superior Court that it was the intention of the pro-

prietor that the lots in question should extend to low water mark on the Juniata river and that the description carried their lines that far. The plot showed that there was no street or strip of land reserved by the founder along the stream. The question in controversy was not so much what was the location of the lots, but did the commonwealth take all of that part of them lying between the canal and the river. The defendant contended that this was the case and introduced the commonwealth's map showing the extent of the appropriation under the act of assembly to show title in the defendant. This map was held to be inadmissible on the appeal to the Superior Court because it was made after the canal was constructed and was considered not evidence of what was actually taken at the time the work was performed, but this view was not sustained in the Supreme Court and the case therefore went for the defendant as it did in the court of common pleas. It is not disputed by the appellants that the grantor of land along a navigable stream may reserve a strip of land next to the water. This is what the plaintiff in the Smucker case alleged had been done by William Smith who plotted and laid out the town of Huntingdon, but in all the courts in which that case was tried it was declared that Smith's plot carried the lots to the river. The plaintiffs alleged that the southern ends of the lots were not appropriated by the commonwealth and this was the very pith of the controversy. When the commonwealth's map was adjudged admissible the plaintiffs' case fell in pieces for that map showed an appropriation of the whole of the lots. The court below did not regard it as important, nor do we, whether the high water mark is to be considered with reference to the river when the dam was in repair or after the flood in 1904 which carried a portion of it away, for the stream seems to have reached the same level at average high water in either condition of the dam.

Another branch of the defense was that the borough had a right to remove gravel cast up by the river within

the lines of Front street even if the plaintiffs had title to
the soil as claimed by them. In his charge to the jury
the learned judge said: "It seems from this case that all
this gravel probably came from within the limits of the
roadway but below the break in the bank and not from
that portion of the roadway which has been used as a
public highway." This conclusion the court reached from
evidence which seemed to show that the action of the
river had worn away the bank in the road and deposited
sand and gravel from time to time on the western half of
the road. On this state of facts the court charged the
jury that the borough had no right to take this gravel
and cart it away to some other street and use it unless it
was taken for the purpose of bettering Front street. We
have not found in the evidence any testimony showing
whether the removal of the gravel was beneficial to Front
street or not. That point does not seem to have been
made the subject of evidence. The trial judge, however,
assumed that it was not the intention to improve the lat-
ter street. This understanding may have been received
from something which occurred at the trial not on the
record or may have been the result of the observation of
the court, but as the work was done by the borough au-
thorities in the exercise of the official discretion committed
to them we are not at liberty to assume that it was not
done in the exercise of a proper discretion in the absence
of evidence tending to show the contrary. We are not
persuaded, however, of the correctness of the instruction
that the borough might not on the facts shown remove
the gravel within the lines of the street, conceding that
the plaintiffs had an interest in the land west of the middle
line of Front street. An abutting landowner is not such
an unqualified owner of the soil of the street in a borough
or city that his consent must be had before the borough
authorities may make use of the soil for any authorized
purpose. The right of the public and of the municipal
authorities over such streets is not limited to their use for
travel merely. Public convenience requires more than

this.  Grading, the construction of culverts, bridges and sewers, the laying of water and gas pipes and other improvements of like character involve a very different use of the street from that which may be exercised over country roads.  The different streets of a borough or city belong to a connected system of thoroughfares which are generally graded with reference to the welfare of the public, and the improvement of one street is often the improvement of the system of streets.  McDevitt v. People's Natural Gas Co., 160 Pa. 367, and Dempster v. United Traction Co., 205 Pa. 70, show to what an extent the ownership of the fee is subservient to the rights of the public in the soil of the street.  It was said in the latter case that abutting owners on streets and alleys in cities and boroughs have no claim for damages by reason of the appropriation of the surface or subsurface for public improvements to the advantage and benefit of all the inhabitants.  The borough or city is regarded as the representative 'of the community and is concerned with the health, comfort and business needs of the people and every lot owner is a sharer in the benefits which such interference with his right to the soil brings about.  Municipal authorities may not only change the surface but cut down trees, dig up the earth and may use it in improving the street or elsewhere: 2 Dillon's Mun. Corporations (4th ed.), sec. 688.  The same rule is sustained in Hovey v. Mayo, 43 Me. 322; New Haven v. Sargent, 38 Conn. 50; Denniston v. Clark, 125 Mass. 216.  These authorities support the right of the borough to remove superfluous gravel from the street and use it in leveling and grading other streets connected with the street from which the gravel is taken, and if the plaintiff's right to the soil were unquestioned his right to object to the regulation of the streets by the borough authorities is not apparent as the case is now presented.  To the extent then to which the gravel was taken from Front street to another street by the borough authorities for the purpose shown by the evidence the defendant is not liable even if it should be determined

that the plaintiffs are owners of the undivided half of the land between the middle line of Front street and low water mark in the river.

The third, fourth, sixth, seventh, eighth and ninth assignments are sustained. The judgment is reversed and a v. f. d. n. awarded.