# Steinogle v. Pittsburg, McKeesport & Youghiogheny Railroad Company, Appellant.

*Road law—Streets—Plan of lots—Deed.*

1. A sale of lots according to a plan which shows them to be on a street implies a grant, or covenant to the purchaser that the street shall be forever open to the use of the public and operates as a dedication of it to public use; and that the owner of any lot in the general plan may assert the public character of any street and the right of the public to use it. The rights in dedicated streets acquired by a purchaser of lots by a deed referring to a plat are private contract rights, and are not affected by the failure of the municipality to act upon the dedication.

2. In an action against a railroad company for obstructing a street not accepted by the public authorities, by the erection thereon of an embankment and the consequent obstruction of the flow of water from plaintiff's lot onto the street when it rained, the case is for the jury, where the evidence for the plaintiff although contradicted, tends to show that there was a sufficient slope of the surface to permit the flow of the water, and that because of the building of the railroad the lot became very wet in rainy weather.

3. In such a case where it appears that the street on which plaintiff's lot abutted was bounded on the opposite side by a river, and that plaintiff had laid a drain pipe from his cellar under the street to the river without objection by anyone, and that this pipe was obstructed by the defendant's construction, the plaintiff is entitled to damages for injuries caused by the flooding of his cellar.

Argued April 21, 1914. Appeal, No. 73, April T., 1914, by defendant, from judgment of C. P. Westmoreland Co., May T., 1913, No. 47, on verdict for plaintiff in case of Conrad Steinogle v. Pittsburg, McKeesport & Youghiogheny Railroad Company. Before RICE, P. J., HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ. Affirmed.

Trespass for injuries to real estate in the borough of Webster. Before McCONNELL, J.

The facts are stated in the opinion of the Superior Court.

The court charged in part as follows:

[Then we have another thing that is mentioned in the testimony, the drainage of the cellar. It is claimed that that has been interfered with to some extent by reason of the road being built over it, and the plaintiff says that it is crushed in. There is some difficulty about that question which is pretty hard to solve. Whether that tile drain was a trespass upon some other person's property rights, or whether it was a permissible use of the thing that is called Water street by the township authorities, is a matter of some doubt. If it is a thing that was permitted by the township, an owner of a lot could drain across Water street, and if Water street was taken by the railroad and this drainage was interfered with, that might be an injury to his rights. That would have to be a thing that was permitted though by public authority, because we cannot get at the existence of such a right by simply looking at the plan of lots. A plan of lots with streets marked on it does not prima facie indicate that on those streets you may erect drains of that character. As I say, it is rather a difficult question to deal with and to ascertain whether that is really a right that he had, or whether it was something that trespassed on the rights of others in so using this thing called Water street. If he had that right, if he was vested with that right, and that was interfered with, why of course that would be an injury to him that he would be entitled to recover as much compensation for as would reasonably make him whole.] [2] We will have something to say on this question in connection with another branch of the case.

[Another thing that adds to this difficulty of determining what his right is, has relation to the rights of parties in a plan of lots. The right of an owner of a lot in a borough or in a city is one thing; out in the country, disconnected with other lots, it is quite a different thing. The right which a person in the country

has to his land with respect to water flowing over it, is expressed in this rule:

"Water runs, and has a right to run where it has been accustomed to run. This is true of surface drainage as well as of running streams."

So that where one man owns a piece of ground on a high level, and another man adjacent to him owns another piece of ground on a lower level, it is the right of the owner of the piece on the upper level to have the surface drainage flow down over the ground below. If the person below would dam the water back and thus injure the upper property owner's land, he would be liable to an action for damages. So that if we were considering a case in which that rule was applicable, and it appears in the evidence that the surface drainage was interfered with by the structure placed upon this space by the railroad company,—if the drainage from the surface of the plaintiff's lot was interfered with, and that damaged the lot, that would be a legitimate ground of complaint on the part of the owner of a lot. We have this further to say on that subject, that the rule in towns and boroughs and in cities is different from the rule in the country with respect to drainage. In boroughs and towns it is expected that provisions will be made for carrying off the water, and it is expected that lots will be built upon, and all that a lot owner needs to do is to take care of the water that falls on his own lot and conduct it to some safe place where a sewer or something of that nature, or drain carries it off. There is no right there to insist that surface water shall flow as it has been accustomed to flow. That rule is invaded where lots are in boroughs and towns. In boroughs and towns a man can use his lot just as he pleases, if he carries the surface water that falls on that lot so that it will not go upon his neighbor. In cities and towns each man must take care of the water that falls on his own lot. Lots in such localities are not subject to the same kind of rule that would apply out in

the country. Now this is not a borough, it is not a city; it is out in the township of Rostraver, and the difficulty I spoke of a while ago is to know just what rule should be applied in the measurement of the rights of the parties here,—whether the rule that ordinarily prevails in cities and towns with respect to lots should apply, or whether the rule that ordinarily applies in the country should prevail. We have no conclusive ruling on that question by our appellate court, so that we have no guide to go by in determining that question in a case of this kind. We are inclined to consider the rights of the parties as is the fact here, that these respective properties are in the country, and therefore, if the surface drainage from the plaintiff's lot has been interfered with, that would be a subject of complaint. If the erection of this railroad on this space has the effect of preventing the water from finding its usual outlet down directly towards the river, that would be an interference with the plaintiff's right for which he should receive compensation to the extent of the injury to his lot.] [3]

Verdict and judgment for plaintiff for $1,225.50. Defendant appealed.

*Error assigned* was portion of charge as above and answer to points.

*Charles E. Whitten* and *Edward P. Doran,* with them *Paul H. Gaither, Vin. E. Williams* and *William F. Wegley,* for appellant.

*Adam M. Wyant,* with him *Edward E. Robbins,* for appellee.

OPINION BY HENDERSON, J., October 12, 1914:

The principal controversy between the parties to this action was whether a street existed between the west line of the plaintiff's lot and the Monongahela river. It is

not disputed that the strip of land between the Power Block of lots and the river and between the lots known as "Gilmore's Addition" and the river was used and known as "Water Street." The blocks of lots referred to call for a street there and several streets open into it from the east. Parallel streets are also indicated in the plots and are opened. Gilmore's second addition in which are located the plaintiff's lots shows an extension of First street which was opened parallel with the river through the Power Addition and the first Gilmore addition. It also shows an extension of the vacant space which was known as "Water Street" between the Power Block and the first Gilmore Block and the river. Two cross streets in the Gilmore's second addition show an intention of the proprietor to provide passageways from First street to this vacant space which the plaintiff contends is Water street. The plaintiff was shown the plan of lots of the second Gilmore addition and bought according to it. The western boundary of his lots is stated in the deed to him from John Gilmore to be Water street. There was evidence from which a jury might find that there had been for forty years or more an open street along the river front from the south end of the Power Block of lots to the Waddington property north of the second Gilmore addition, and the evidence warrants the conclusion that the defendant had knowledge of this fact. That the plaintiff's grantor covenanted that a street existed on the west side of the plaintiff's lots is shown by the deed, and corroboration of the existence of the street is given in the testimony as to its use. Between the grantor and grantee, therefore, the latter was entitled to the use of the way without obstruction or hindrance from the grantor or any person claiming under him with notice of the plaintiff's right. "If there is anything settled by judicial decision in this state, it is that a sale of lots according to a plan which shows them to be on a street implies a grant, or covenant to the purchaser that the street

shall be forever open to the use of the public and operates as a dedication of it to public use; and that the owner of any lot in the general plan may assert the public character of any street and the right of the public to use it. The rights in dedicated streets acquired by a purchaser of lots by a deed referring to a plat are private contract rights, and are not affected by the failure of the municipality to act upon the dedication:" O'Donnell v. Pittsburg, 234 Pa. 401; Cake v. Sunbury Boro., 43 Pa. Superior Ct. 95. If the defendant had this notice there was a clear invasion of the plaintiff's rights. The jury found on competent evidence that the road existed as claimed by the plaintiff and we see no error in the instruction of the court on that subject.

In addition to the appropriation of the road by the defendant and the erection thereon of a railroad embankment more than seven feet high the plaintiff alleged that his property was injured by the obstruction of the flow of water from his lots onto the street when it rained. His testimony tended to show that there was a sufficient slope of the surface to permit the flow of water in that direction and that because of the building of the railroad his lot became very wet in rainy weather. There was some contradiction of the evidence on this subject but it was necessarily a question which the jury only could dispose of.

Another ground of complaint was that a drain pipe which the plaintiff had laid from the cellar out to the bank on the west side of the street was closed up by the construction of the embankment and that he was thereby deprived of an outlet for water which might come into his cellar as a consequence of which condition his cellar became very damp and at times contained a large quantity of water. The defendant denied the right of the plaintiff to drain into the street, but if the situation were as disclosed by the testimony offered in support of the action we think the defendant cannot successfully rest on that defense. The plaintiff alleges that the street

had been encroached upon by the river to such an extent as to make necessary the construction of a wall to prevent further undermining and that the road was perhaps thirty-five feet wide at the time the defendant made the fill. No restriction was put on the plaintiff in regard to the use of the street nor were there any conditions which restrained him from permitting the flow of surface water onto the street or of water from the cellar under the street. The placing of a drain from the cellar in the street was not an unreasonable use thereof. If at the time of the purchase of the lots the street extended to the river it might fairly be inferred that the grantor contemplated the use of the street for such a purpose. The improvement of the property reasonably suggests such a use and is consistent with the other rights which the plaintiff acquired in the purchase of the lots if the facts are as found by the jury: McElhone's Appeal, 118 Pa. 600. In this view of the case it is not material whether there was evidence of the consent of the supervisors of the township to the placing of the pipe nor whether the supervisors were consulted with reference thereto inasmuch as the testimony does not show that the street was a public highway accepted by the township authorities.

The learned trial judge excluded from the consideration of the jury all the evidence relating to noise and smoke, the obstruction of the river view and the loss of the use of the river as a water supply. This was done in language so plain and explicit that there could have been no misunderstanding by the jury in regard to the questions on which they were to pass and there is no substantial ground for complaint on this account. An examination of the whole case has not disclosed any material error.

The judgment is affirmed.