## Jackson et al. v. Sullivan County Electric Company.

*Electric light companies—Right of eminent domain—Shade trees—Borough ordinance—Approval of Public Service Commission—Injunction—Acts of May 8, 1889, June 2, 1891, and May 14, 1915.*

1. An electric light company, incorporated under the Act of May 8, 1889, P. L. 136, has a limited power of eminent domain, and, having been duly authorized by municipal consent to enter upon borough streets for its corporate purposes, may ordinarily run its wires through the shade trees of abutting land owners and trim them for such purpose, being answerable in damages, under the Act of June 2, 1891, P. L. 170, for resulting injury.

2. In the absence of a valid ordinance, such company must comply with the notice of abutting owners to leave their shade trees undisturbed.

3. Under the General Borough Law of May 14, 1915, P. L. 312, 402 (ch. vii, art. vi, § 6), the validity of a borough ordinance is dependent upon its transcription into the ordinance book, with the signature there of the presiding officer of the council.

4. The Public Service Commission is an administrative, not a judicial, body, and its orders cannot be made the foundation for the judicial determination of disputed corporate franchises.

Bill for injunction. C. P. Sullivan Co., March T., 1920, No. 1, in Equity.

The plaintiffs, owning a residence on Main Street in Dushore Borough, filed an injunction bill to restrain the defendant electric company—incorporated under the Act of May 8, 1889, P. L. 136—from stringing its wires through their three shade trees in front of their property, and a preliminary injunction was awarded.

Feb. 5, 1906, said borough, by ordinance, duly granted to J. G. Black, his heirs and assigns, the privilege of entering in and upon its streets to erect poles for wires for use in the operation of his electric plant, to supply the public with electric light, heat and power. Feb. 5, 1916, the borough made a contract with Black, whereby he agreed to furnish it designated street lighting for ten years. June 16, 1919, the borough council passed another ordinance of like purport, repealing any conflicting ordinance, granting Black, his successors or assigns, the privilege of constructing and maintaining poles, wires and fixtures upon and through the borough streets necessary to transmit and distribute electrical energy. This ordinance was not transcribed into the ordinance book until August, 1920, and it was not signed therein by the president of the council or burgess. Their names were placed there by the secretary of the council after the filing of the bill. Dec. 8, 1919, upon Black's application, the Public Service Commission approved the Ordinance of June 16, 1919,

the original instead of a verified copy being presented to it, and the commission issued to Black the required certificate of public convenience. June 1, 1920, Black by deed conveyed his electric plant, together with the franchise, to the defendant company; the sale was approved by the Public Service Commission on Sept. 14, 1920, and a certificate of public convenience awarded.

The defendant's poles and wires adjacent to plaintiffs' residence, as well as some telephone and telegraph poles and wires, were on the opposite, the east, side of the street, where there were no shade trees, but in contemplation of changing its line to the west side, whereon was such residence, the defendant, to avoid danger from proximity of its wires to others and to provide a straight line for its own, had erected poles on the west side of the street at other points, and, prior to the issuance of the injunction, had notified plaintiffs of its intention to string wires through said trees in making such change, and to cut and trim the branches thereof for such purpose.

The defendant denied the plaintiffs' averment that the destruction of the trees would result, and it was shown on the hearing that in some municipalities electric light wires are strung through shade trees, but whether attended with injury to them was disputed. Apparently, the court said, in a finding of fact, it is a matter of proper construction and maintenance of insulation, and negligence would not be assumed.

*E. J. Mullen* and *John G. Reading*, for plaintiffs; *A. W. Duy*, for defendant.

TERRY, P. J., June 12, 1922.—The plaintiffs have standing to question the defendant's authority to interfere with their shade trees: Hannum *v.* Railway Co., 200 Pa. 44; Gring *v.* Sinking Spring Water Co., 270 Pa. 232.

The borough ordinances and its contract with Black, the deed from him to the defendant, the records before the Public Service Commission and its certificates, specified in our findings of facts, were admitted under objection, their effect to be determined in our disposition of the case. We now admit all of them in evidence, and their relevancy and weight will appear a little later in this opinion.

We do not sustain the plaintiffs' broad contention that an individual, a person, cannot legally be authorized to occupy the streets of a municipality to furnish electric lights to the public. That the right of eminent domain cannot be acquired by a person merely for his private advantage is undoubted, but the legislature may confer upon an individual the power to condemn private property for public purposes: 20 Corpus Juris, 544; Philadelphia, etc., Co.'s Appeal, 102 Pa. 123; Philadelphia Clay Co. *v.* York Clay Co., 241 Pa. 305, 309. Section 8 of article XVI of the Constitution of this State provides for compensation for the taking of private property for public use by "municipal and other corporations and individuals invested with the privilege of taking" such property. And in section 1 of article I of the Public Service Company Law of July 26, 1913, P. L. 1374, the enumeration of the corporations included within the term "Public Service Company," is followed by the language "and also all persons engaged for profit in the same kind of business within the Commonwealth."

A promoter's contract may be adopted or ratified by the corporation subsequently formed: 14 Corpus Juris, 257, citing, *inter alia*, Pennsylvania cases, among them Girard *v.* Case Bros. Cutlery Co., 225 Pa. 327; Central Trust Co. *v.* Lappe, 216 Pa. 549.

A franchise lawfully granted may be transferred to another (26 Corpus Juris, 1038, § 89), especially, in such a case as this, if based upon approval

4 D. & C.

by the State, through the Public Service Commission, of the contract of sale and a proper municipal ordinance.

An electric light company, incorporated under the Act of May 8, 1889, P. L. 136, has a limited power of eminent domain (Brown v. Electric Light Co., 208 Pa. 453) after obtaining the required municipal consent to the occupancy of streets stipulated in the 2nd section of that statute. Such consent, however, is imperative, and it must be lawfully given. Since the organization of the Public Service Commission, a proposed public service company can only begin the exercise of any right, power, franchise or privilege under any ordinance, municipal contract or otherwise after obtaining the approval of such commission, evidenced by its certificate of public convenience: Section 2 of article III of the Act of July 26, 1913, P. L. 1374.

This brings us to the real trouble of the case. The borough Ordinance of Feb. 5, 1906, gave municipal consent to Black, the grantor of the defendant, to enter upon the borough streets to erect poles on which to place wires for use in the operation of his electric plant, to supply the public with light, heat and power. But the Public Service Commission was not asked to consider or approve that ordinance. On the contrary, the subsequent Ordinance of June 16, 1919, was the one submitted to it, on which its approval was obtained and its certificate issued. Black, the petitioner in that proceeding, elected to stand thereon. Why, we do not know, unless it was because, as indicated by the words of repeal in the latter, the earlier ordinance was meant to be superseded by the later one, which plainly supplied the other. Such later ordinance, for some unexplained reason, apparently was deemed necessary, and it is indisputable that the approval and certificate of the Public Service Commission were secured thereon. That ordinance, however, is invalid because it was not signed in the borough ordinance book by either the president of the council or the burgess. The certificate of the secretary of the council, in connection with the recording of the ordinance, required by the Act of May 23, 1893, P. L. 113, is unnecessary under the new Borough Law of May 14, 1915, P. L. 312, which repealed said Act of 1893, attestation now sufficing; but the validity of a borough ordinance is still dependent, as provided in the 8th section of the Borough Act of April 3, 1851, P. L. 320, upon its transcription into the ordinance book with the signature there of the presiding officer of the council: Section 6 of article VI of chapter 7 of said new borough law; Com. v. Beaver Borough, 171 Pa. 542; Tunkhannock Borough Extension, 3 Pa. C. C. Reps. 480. In Cessna v. Clouse, 52 Pa. Superior Ct. 442, the ordinance there involved was held invalid on account of precisely what occurred here, viz., the signing by the secretary of the transcribed record in the ordinance book of the names of the presiding officer and burgess. The lack of due advertisement is also fatal to a borough ordinance, but such defect must be affirmatively shown by the party attacking it: Ridley Park v. Light and Power Co., 9 Pa. Superior Ct. 615.

The Public Service Commission naturally assumed, from the production of the original ordinance before it, duly signed, that such municipal enactment was effective, but the approval of that body of the application for a certificate of public convenience did not validate such ordinance. The Public Service Commission is an administrative body, not a judicial one, and its orders cannot be made the foundation for the judicial determination of what franchises do or do not belong to any corporation interested: Passyunk A. B. M. Ass'n v. Public Service Commission, 73 Pa. Superior Ct. 242, 251.

The defendant can only justify interference with the plaintiff's trees by showing its corporate right, which must appear, not only by its charter, but

also by a legally-secured municipal consent to enter upon the borough streets for its corporate purposes, sanctioned by the Public Service Commission, upon whose approval of any ordinance or municipal contract, and not otherwise, a public service company may begin the exercise of the right by such contract or ordinance conferred: Section 2 of article III of the Act of July 26, 1913, P. L. 1374. As that commission has not given its approval of the exercise of the right by the defendant to enter upon the streets of Dushore Borough under any valid ordinance, no such right exists, and, therefore, the defendant cannot legally, in the present situation, disturb the plaintiff's trees. The subsequent approval by the Public Service Commission of the sale of the plant, etc., by Black to the defendant did not supply the want of a valid ordinance, nor did it purport to do so. The injunction will be continued. This conclusion is a sufficient disposition of the case as now presented, but as an effectual ordinance may be enacted by the borough and approved by the Public Service Commission, it is proper to indicate our view of the right of the defendant, in such event, to string its wires through the trees on the borough streets.

An abutting owner has a fee in a road or street to its centre (Paul *v.* Carver, 26 Pa. 223; Spackman *v.* Steidel, 88 Pa. 453; Woodward *v.* Pittsburgh, 194 Pa. 193), but the rights of such an owner on a city or borough street are not the same as of one on a public road in a township: McDevitt *v.* Gas Co., 160 Pa. 367; Pennsylvania R. R. Co. *v.* Montgomery County Pass. Ry. Co., 167 Pa. 62; Lockhart *v.* Railway Co., 139 Pa. 419; Duquesne Light Co. *v.* Duff, 251 Pa. 607. In Lockhart *v.* Railway Co., 139 Pa. 419, it was said: "And it may now be taken as settled [speaking of city streets] that the owner's rights as to abutting property are subject to the paramount right of the public, and the rights of the public are not limited to a mere right of way, but extend to all beneficial legitimate street uses, such as the public may from time to time require." The same is true of borough streets. See, also, Wood *v.* McGrath, 150 Pa. 451; Dempster *v.* United Traction Co., 205 Pa. 70; Cooke *v.* Telegraph Co., 21 Pa. Superior Ct. 43; Cake *v.* Sunbury Borough, 43 Pa. Superior Ct. 95.

A borough has by law the general power to regulate the streets, walks, etc., therein and the control of shade trees when required for the benefit of the public: 27 Am. & Eng. Ency. of Law (2nd ed.), 149; Livingston *v.* Wolf, 136 Pa. 519; article I of chapter 5 of the General Borough Act of May 14, 1915, P. L. 312.

While the wanton destruction of shade trees might be enjoined, we think an incorporated electric light company, duly authorized by municipal consent to enter upon borough streets, may ordinarily run its wires through the trees of abutting owners and trim them for such purpose. And this is contemplated by the Act of June 2, 1891, P. L. 170, giving a remedy to such owners by assessment of damages for any resulting injury.

Without any such authority, electric light companies must comply with the notice of the abutting owners to leave their shade trees undisturbed.

Same day, decree entered continuing the injunction until further order of the court, but without prejudice to the right of the defendant to move to dissolve it upon the approval by the Public Service Commission of a valid ordinance of Dushore Borough giving municipal consent to the defendant to enter upon the streets of the borough for its corporate purposes.

NOTE.—Subsequently a valid borough ordinance was passed and approved, and on June 11, 1923, the injunction was dissolved by consent.

From Joseph F. Ogden, Tunkhannock, Pa.