## Hamilton Township Road

J. Frances Yake, Jr., for exceptant.
Eugene V. Bulleit, contra.

SHEELY, P. J., October 2, 1943.—Prior to 1919 it was "the settled rule of this state that a public road must begin and end in a public highway or a place of public resort: Miller's Road Case, 9 S. & R. 35; West Pikeland Road, 63 Pa. 471": Schuylkill River Road, 19 Pa. Superior Ct. 376 (1902). The distinction between a public and a private road was there stated to be that a private road is one with a public terminus and a private terminus, while a "public road must have a public terminus at the beginning and ending points".

The Act of June 20, 1919, P. L. 509, 36 PS §1921, provided that a petition for a road shall not be held invalid for the reason that one of the termini named in the petition or in the report is at a point other than in a public highway or place of public resort "where it appears in such petition or report that the other terminus is in a public road and that the road is one necessary for public travel . . ." This act was amended by the Act of July 12, 1935, P. L. 732, to make the same provision with relation to a road necessary "for the use of a property owner or owners, no longer located on a public highway, by reason of the vacation of the public highway formerly serving such property . . ." Since the Act of 1919 and the amendment thereto there are four situations in which public roads may be laid out:

1. Both termini in public roads.

2. One terminus in a public road and the other at a place of public resort.

3. One terminus in a public road and the road "is one necessary for public travel": Act of 1919.

4. One terminus in a public road and road is necessary "for use of a property owner or owners no longer located on a public highway, by reason of vacation of the public highway formerly serving such property . . .": amendment of 1935.

In the latter two cases the finding of the viewers that the road is necessary is subject to approval of the court of quarter sessions.

The reports of the viewers and the reviewers in this case contain a finding that one terminus of the proposed road is in a public road and the other terminus is at a place of public resort: a Boy Scout camp. The reports also purport to find that the road is one necessary for public travel; the wording of the report of the reviewers is "that the road is of such a necessity for the use of the traveling public that it should be opened, etc." Exceptants contend that the Boy Scout camp is not a place of public resort and that the road is not necessary for public travel. If we find that the Boy Scout camp is a place of public resort the report of the reviewers laying out the road must be confirmed without regard to the question of necessity since that question cannot be raised by exceptions: Schuylkill River Road, 19 Pa. Superior Ct. 376 (1902). If we find that the Boy School camp is not a place of public resort we must determine whether the road is one necessary for public travel since the Act of 1919 requires the approval of that finding by the court whether or not exceptions are filed.

The "necessary resort" of the statute has been defined as a place of public resort where men are in the habit of meeting on their lawful business or in pursuance of their proper duties. In Schuylkill River Road, supra, it was stated (p. 378):

"A point on a navigable river (Balliet v. Commonwealth, 17 Pa. 509); intersecting points on two public roads (Springfield Road, 73 Pa. 127); a church, a cemetery, a public school (West Pikeland Road, 63 Pa. 471); a public place on the boundary line of a state, a county and a borough (15 Am. & Eng. Ency. of Law [2d ed.], 356; Trickett's Penna. Road Law, 23), have been held to be sufficient termini to warrant the confirmation of a public road—to which we have no hesitation in adding a large manufacturing establishment

like the Pencoyd Iron Works and a public station on a railroad". The Pencoyd Iron Works was a large manufacturing plant covering many acres, where thousands of persons were employed.

In West Pikeland Road, 63 Pa. 471, 474 (1870), it was held that "A church is a place of public resort, and especially when a graveyard is attached to it, it may be very necessary for the accommodation of the neighborhood that the road to it should be a highway . . . A church is open to all who desire to worship God and receive religious instruction at the regular and appointed seasons; it is not closed against any one who behaves with propriety."

The basic distinction between a public road and a private road is that the former is one which the general public, as distinguished from those owning the land where it terminates, has occasion to use and finds useful and convenient, although it is not requisite for a public road that all inhabitants of the county have occasion to use it: West Pikeland Road, 63 Pa. 471. Section 11 of the Act of June 13, 1836, P. L. 551, as amended, 36 PS §2731, on the other hand, provides for laying out a private road from the lands of "one or more persons, associations, partnerships, stock companies, or corporations", to a highway or place of necessary public resort, or to any private way leading to a highway. As to the latter it was said in Miller's Road Case, 9 S. & R. 35, 38 (1822):

". . . when a passage is asked, from the land of an individual to a public road, it is scarce possible that the public should have any interest in it, and it would therefore be unjust, that it should be paid for, opened, or kept in repair at the public expense."

The public resort at which a public road may terminate contemplates a place to which the general public may, and probably would, go either for business or for pleasure. If the resort is limited to a particular group of the public, or may be so restricted, it ceases to be a public resort and the road comes within the defini-

tion of a private road under section 11 of the Act of 1836. In the present case it is not suggested that the facilities of the camp are open to the public any more than are the facilities of a country club or other private organization. The camp is open about two and a half months each year and, during this period, the road is used by parents and friends of the boys encamped there, the travel of the entire road (which passes 19 cottages) consisting of possibly 40 cars daily and an average of from one hundred to two hundred on Sunday. During the nine and a half months that the camp is closed no one would have occasion to use the road except to reach the cottages (which are also used only during the summer), and if those in charge of the camp determine to restrict visitation for any reason, that would be the situation throughout the year.

The camp is entirely different from a church to which the public generally is invited and welcomed, or a public school or park to which the public has a right to go, or a railroad station which serves the public, or a large manufacturing plant where several thousand persons are employed throughout the year. We conclude that the camp is not such a place of public resort as to permit it to constitute the terminus of a public road.

It remains to be determined whether the road is necessary for public travel. It is difficult to conceive of a road necessary for public travel that does not terminate at a public road or at a point where the public may resort, although the Act of 1919 contemplates that there may be. Assuming that there may be instances in which that would be true, this is not that case. What we have said above indicates that the road has a very limited use and that it serves only the camp and the cottages, and those only during the summer season. That it was intended solely for that purpose is indicated by the draft attached to the report. Near the western terminus the road describes two and a half sides of a rectangle for a distance of 1,401 feet, passing six cottages, whereas the point of ending could have been

reached by going across land of Roy Breighner for 550 feet. The total length of the road is 5,089.9 feet, and has constituted a private road for the convenience of the cottage owners for a number of years. There are no facts in the reports of the viewers or reviewers which make it appear that the road is one necessary for public travel.

And now, October 2, 1943, the exceptions to the report of the viewers and to the report of the reviewers are sustained, and the petition to lay out the public road is dismissed.